Commonwealth *v.* Mullen et al., Appellants.

Argued November 16, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, CERCONE, and SPAETH, JJ. (SPAULDING, J., absent).

*Thomas A. Livingston,* with him *Vincent C. Murovich, Jr.,* for appellants.

*Robert L. Eberhardt,* Assistant District Attorney, with him *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION BY CERCONE, J., June 21, 1974:

Defendants appeal from their convictions below on various indictments charging conspiracy to cheat and defraud, receiving stolen goods, larceny, cheating by fraudulent pretenses, and forgery. They contend, inter alia, that the lower court erred in not granting a motion for severance on the grounds that the indictments charged crimes that were separate and independent

from each other and that their consolidation at one trial prejudiced them.

Defendant Michael Mullen was indicted for conspiracy to cheat and defraud Myrtle Baun. He was also separately indicted for the crime of conspiracy to cheat and defraud J. G. Rothrock and his wife. In both these indictments, defendants Gordon Otten and John Ruffalo were mentioned as co-conspirators but were not indicted as such. Mullen was also indicted on counts of cheating by false pretenses, larceny and receiving stolen goods.

Defendant Gordon Otten was separately indicted for conspiracy to cheat and defraud Myrtle Baun by false pretenses and for the crime of larceny. He was also separately indicted for conspiracy to cheat and defraud J. G. Rothrock and his wife and for the crimes of cheating by false pretenses and larceny. He was also separately indicted for conspiracy to cheat and defraud Caroline Kleinhampl. In these three indictments against Otten, the defendants Mullen and Ruffalo were mentioned as co-conspirators but were not indicted as such. Otten was also indicted for forgery, burglary, larceny and receiving stolen goods.

Defendant Ruffalo was indicted in two separate counts with conspiracy to cheat and defraud Myrtle Baun and to cheat and defraud J. G. Rothrock and his wife. Defendants Mullen and Otten were mentioned as co-conspirators but were not indicted as such.

At trial when the defendants moved for a severance of the various charges on the grounds primarily that the conspiracies and other crimes were not a part of a common plan or scheme but separate and independent from each other the lower court, in refusing the motion stated, "the court will take whatever measures are required at the proper time to see that the jury considers the matter separately and we will, therefore, refuse your motion for severance." Unfortunately, the

trial court failed to do this either during the trial or in its charge to the jury.

In its instructions to the jury the trial court charged generally on the crime of conspiracy. In doing so, the court implied to the jury that all three indictments were the result of the activity of one conspiracy, thus permitting, to the prejudice and jeopardy of the defendants, consideration by the jury of all the evidence presented in support of the five indictments in deciding the guilt or innocence of any of the defendants as to any particular charge made against them. In the light of the defendants' motion for severance, the lower court failed to take the defendants' position into consideration since this became a matter for the jury's deliberation and decision as to whether the facts in the case represented one conspiracy or three separate conspiracies. In order to have given the jury an opportunity to make this determination the trial court should have instructed the jury on the possible finding of either one continuous conspiracy or three separate ones. The court should have clearly delineated the substantive crimes as they related to each of the three indictments in which conspiracies were charged. It should have kept before the jury a clear picture of what crimes were being alleged in each indictment against which of each defendants in the event the jury determined that there were three separate conspiracies instead of one. And further in this posture the jury should have been instructed that they were not to take into consideration evidence of other non-related crimes set forth in separate indictments. In failing to do this the court allowed a cross-over of evidence which, although admissible as proof of one of the substantive crimes against a particular defendant in a particular indictment, was in no way related as evidence to prove the commission of another crime against another particular defendant in another one of the five indictments.

The Commonwealth argues that the defendants were charged by all the indictments with participation in one general conspiracy or scheme, and that the consolidation of these indictments at trial was not prejudicial to defendants. In fact this is the position the court took in its charge. In reality, the three conspiracies, which did not overlap in time, took place over a period of approximately a year and one half and there was no evidence to indicate a continuing common scheme or plan during this period of time. The evidence indicates that the Buffalo conspiracy ended before the Kleinhampl conspiracy began.

The justification for allowing the consolidation of a number of indictments for trial appears to be the economy of a single trial, and is within the discretion of the trial court. *Commonwealth v. Kubacki*, 208 Pa. Superior Ct. 523 (1966); *Commonwealth v. Evans,* 190 Pa. Superior Ct. 179 (1959). However, as stated by the Federal Court in *Drew v. United States,* 331 F. 2d 85 (D.C. App., 1964), the argument against such consolidation is that the defendant, "may be prejudiced for one or more of the following reasons: (1) he may become embarrassed or confounded in presenting separate defenses; (2) the jury may use the evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crimes charged; or (3) the jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find. A less tangible, but perhaps equally persuasive, element of prejudice may reside in a latent feeling of hostility engendered by the charging of several crimes as distinct from only one." In considering the consolidation problem the federal courts have articulated an evidence oriented test: "consolidation will be held proper when we can say that the evidence of the defendant's commission of one crime would

be admissible at the trial of a second crime, if the two crimes were tried separately:" *Drew v. United States,* supra.

Under both Pennsylvania and federal cases the concern is to protect an accused against the danger that consolidation will prejudice the defendant. The trial court must therefore weigh the obvious need for the efficient and economical operation of judicial administration against the prejudice that may be caused to the defendant by such a consolidation.

Evidence of the commission of one crime is not admissible, in the trial of another crime, to prove the disposition of the defendant to commit that crime because to admit such evidence would allow the jury to infer from it that the defendant also committed the crime charged.[1] Since such a jury inference is highly probable, evidence of other crimes is admissible only as an exception to the general rule when relevant to show (1) motive, (2) intent, (3) the absence of mistake or accident, (4) a common scheme or plan embracing the commission of two or more crimes *so related to each other that proof of one tends to establish the other,* (5) the identity of the person charged with the commission of the crime on trial.[2] When the evidence is relevant and important to one of these exceptions, it is generally conceded that the prejudicial effect may be outweighed by the probative value. *Drew v. United States,* supra, p. 90. When the evidence of one crime is not relevant to one of the above exceptions, its admission creates an intolerable risk of prejudice: *Commonwealth v. Wable,* 382 Pa. 80 (1955). In the instant case the evidence at trial presented an issue for the jury as to whether or not there was a connection between the

---

[1] See I Wigmore, Evidence §§192-94 (3d ed. 1940) ; McCormick, Evidence, §157.

[2] See Wigmore, Evidence §§300-371. This list is not necessarily all-inclusive.

several conspiracies so that evidence of one would be admissible to show the existence of another. In Pennsylvania introduction of evidence of one crime at the trial of a separate and distinct crime on the basis that the two were committed in pursuit of a common scheme or plan has been allowed on facts markedly different than those present in this case. Either the time span was much shorter—ranging from a few moments to a few days or the location of the two or more crimes was much closer, or the nature of the two crimes was all but identical: *Commonwealth v. Wilson,* 444 Pa. 114 (1971); *Commonwealth v. Smith,* 443 Pa. 151 (1971); *Commonwealth v. Ross,* 413 Pa. 35 (1963); *Commonwealth v. Raymond,* 412 Pa. 194, 199 (1963); *Commonwealth v. Lehman,* 166 Pa. Superior Ct. 181 (1950). In our case we have none of these: the time span between the beginning of the conspiracy against the Rothrocks and the conspiracy against Myrtle Baun is approximately one and one-half years; the victims lived in different locations; the schemes by which they were defrauded—although similar in two of the three cases—are by no means identical in nature and character so as to support the contention that they were perpetrated as a common scheme or plan "so related to each other that proof of one tends to prove the others or . . . that proof of one will naturally tend to show that the accused is the person who committed the other." *Commonwealth v. Foose,* 441 Pa. 173, 176 (1971); *Commonwealth v. Wilson,* 444 Pa. 117 (1971).[3]

Furthermore, at the conclusion of the Commonwealth's case the defendant Otten successfully demurred to some of the charges against him and they

---

[3] *Commonwealth v. Wable,* supra; *Commonwealth v. Coyle,* 415 Pa. 379 (1964); *Commonwealth v. Ross,* 413 Pa. 35 (1963); *Commonwealth v. Raymond,* supra; *Commonwealth v. Gockley,* 411 Pa. 437 (1963); *Commonwealth v. Burdell,* 380 Pa. 43 (1955); *Commonwealth v. Fugmann,* 330 Pa. 4 (1938).

were withdrawn by the trial court from the jury's consideration. In reviewing the testimony, the lower court properly excluded the testimony of two witnesses who testified for the Commonwealth concerning the withdrawn charges. The lower court, however, precluded any effect of its ruling when it failed to instruct the jury that they were not permitted to consider any of the evidence presented on the demurred-to charges when considering the remaining charges against the three defendants.

What has been said so far regarding the error in the trial court's consolidation of the various indictments against the defendants here does not mean that consolidation would always be improper under such circumstances. Although it would undoubtedly be difficult, in a complicated case such as this, to instruct the jury in a manner that would enable them to keep the evidence separate as it applied to each crime allegedly committed by each defendant, we do not now say that it cannot be done. As long as the rights of the defendants are not invaded by the consolidation, the trial judge's exercise of discretion will not be disturbed. *Commonwealth v. Antico*, 146 Pa. Superior Ct. 293 (1941). The possibility that the defendants might be put to a tactical disadvantage by the consolidation does not affect this conclusion if "[a]s the trial of the substantive offenses proceed[s] the jury were informed in advance of the particular charge to which the testimony was to be applied and it was limited in its scope to the single defendant involved." *Commonwealth v. Antico*, supra. But in the instant case, the defendants' rights to a fair trial have been jeopardized.

Accordingly, the convictions of the defendants herein are reversed and case remanded for a new trial in conformity with this opinion.

WRIGHT, P. J., and JACOBS, J., dissent.