Commonwealth *v.* Irons, Appellant.

Submitted March 11, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*William H. Saye,* Public Defender, for appellant.

*Marion E. MacIntyre* and *Rolf W. Bienk,* Deputy District Attorneys, and *LeRoy S. Zimmerman,* District Attorney, for Commonwealth, appellee.

OPINION BY SPAETH, J., September 23, 1974:

Appellant was convicted by a jury of aggravated assault and battery and of assault with intent to murder. The assaults were one year apart and there was a separate indictment for each. The issue is whether it was proper to consolidate these indictments for trial.[1]

---

[1] A second issue raised by appellant is whether there was sufficient proof of "grievous bodily harm" to convict him of aggravated assault and battery under the Act of June 24, 1939, P. L. 872, §709, 18 P.S. §4709 (now repealed). This issue is frivolous.

Both assaults were on one Mary Green, and her testimony and the testimony of the other Commonwealth witnesses may be summarized as follows:

Mrs. Green had lived with appellant as his common law wife for about three years, off and on, and had had one child by him. On May 19, 1972, she, her children (appellant's child and two children by a prior marriage), and several couples were at her home; the adults were drinking. At about 2:30 a.m. appellant arrived and announced that he was going to take his child elsewhere because they were drunk. When he brought the child downstairs, Mrs. Green argued with him. One of the guests stepped in to aid her, and appellant hit him. After further argument appellant picked up a wine bottle and broke it across Mrs. Green's face, inflicting numerous cuts, blackening both her eyes, and knocking her unconscious. The police officer who arrived on the scene testified that he found Mrs. Green lying unconscious in a pool of blood and still bleeding from the face with bits of broken glass scattered around her.

From the time Mrs. Green filed a complaint in connection with this incident appellant constantly threatened her with harm unless she dropped the charges. On one occasion he fired shots into a trailer in which she was living, but that case was dismissed when, because of appellant's threats, she failed to appear at the preliminary hearing. On May 4, 1973, appellant came to Mrs. Green's trailer and told her she would never walk into a courtroom to testify against him. On May 5, he came back to the trailer. This time Mrs. Green's niece, Rhonda Fields, was with her. Appellant told Mrs. Green he wanted to talk to her privately, so they went into the bedroom. Miss Fields was summoned to the bedroom by a scream from Mrs. Green, who was standing on the bed holding a gun; she told Miss Fields to call the police. Mrs. Green testified that she had had to

take the gun from appellant. After Miss Fields left to call the police, Mrs. Green jumped off the bed and attempted to leave the room, but a fight ensued and the gun went off, hitting her in the finger. Appellant got the gun and shot her in the abdomen, leg, and buttocks; when she fell to the floor, appellant shot her in the leg again. A surgical resident at the hospital to which she was taken testified that she had a total of six wounds and had lost one-third to one-half of her blood.

Appellant testified and gave a different version of these incidents. He denied hitting Mrs. Green with the bottle. He said her cuts were probably from falling down from intoxication when she ran away from him. As for the shooting, he said the gun was Mrs. Green's, she had produced it, and her wounds were the result of an accident.[2]

In examining this case it is important to bear in mind two lines of decisions, which run nearly parallel so that in the course of research one may easily miss their intersection. One line concerns the issue of when evidence of one crime will be admissible at the trial of another crime; the other line concerns the issue of when consolidation of two or more indictments is proper.

The leading case on the admissibility of evidence of another crime is *Commonwealth v. Wable,* 382 Pa. 80, 114 A. 2d 334 (1955). The general rule is that such evidence is inadmissible because the fact of the commission of one crime is not proof of the commission of another. The exception to the general rule is that such evidence is admissible when it tends to prove (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others; or

---

[2] Appellant also called his sister but her testimony was equivocal and added little to the case one way or the other.

(5) to establish the identity of the person charged with the commission of the crime on trial. "[I]n other words, [the evidence is admissible] where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other." *Commonwealth v. Peterson,* 453 Pa. 187, 197-198, 307 A. 2d 264, 269 (1973). *And see Commonwealth v. Schmidt,* 452 Pa. 185, 299 A. 2d 254 (1973); *Commonwealth v. Gilmore,* 447 Pa. 21, 288 A. 2d 757 (1972); *Commonwealth v. Smith,* 443 Pa. 151, 277 A. 2d 807 (1971); *Commonwealth v. Foose,* 441 Pa. 173, 272 A. 2d 452 (1971); *Commonwealth v. Mullen,* 228 Pa. Superior Ct. 207, 324 A. 2d 410 (1974); *Commonwealth v. Williams,* 227 Pa. Superior Ct. 103, 323 A. 2d 135 (1974).

The rule with respect to the propriety of consolidation is not so easily stated. Usually it is said that the decision to consolidate "is a matter of discretion with the trial judge, whose conclusion will be reversed only for manifest abuse of discretion or prejudice and clear injustice to the defendant." *Commonwealth v. Peterson, supra* at 193, 307 A. 2d at 267; *Commonwealth v. Patrick,* 416 Pa. 437, 206 A. 2d 295 (1965); *Commonwealth v. Mullen, supra; Commonwealth v. Kubacki,* 208 Pa. Superior Ct. 523, 224 A. 2d 80 (1966). In practice, however, this rule has proved difficult to apply; it is so general that it offers no guidance as to when discretion has been "abused" or a defendant has suffered "prejudice and clear injustice."[3]

_____

[3] Nor do the procedural rules offer guidance. Pa. R. Crim. P. 219(b) provides that "[t]wo or more offenses, of any grade, other than murder, may be charged in the same indictment if they are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan. There shall be a separate count for each offense charged." There is, however, no procedural rule for a case (such as this one) that involves more than one indictment. *But see* footnote 4, *post.*

In *Commonwealth v. Peterson, supra,* the Supreme Court struggled with this problem of generality, but split drastically. The lead opinion, representing the view of three justices (EAGEN, J., joined by JONES, C. J., and O'BRIEN, J.), relied on *Drew v. United States,* 331 F. 2d 85 (D.C. App. 1964), and held that consolidation is proper either where evidence of the distinct crimes would be admissible if there were a separate trial on each, or where "the evidence is capable of separation by the jury [so that] the danger of confusion is not present . . . ." *Commonwealth v. Peterson, supra* at 200, 307 A. 2d at 271. Applying this test to the facts before them, the three justices concluded that although "the evidence of each of [the] particular crimes would not have been admissible in a separate trial for the other," *id.* at 198, 307 A. 2d at 270, the evidence was sufficiently separable to allow the consolidation. They therefore affirmed. Mr. Justice POMEROY concurred in the affirmance, but only because he believed that the evidence of the particular crimes would have been admissible in separate trials. He expressly refrained from "decid[ing] whether joinder of offenses under Rule 219[4] is permissible beyond the scope of the common scheme, plan or design exception to the evidentiary rule that a man's past misconduct is not relevant in establishing his conduct on a later occasion [footnote omitted]." *Id.* at 202, 307 A. 2d at 272. The dissenting justices (ROBERTS, J.,

---

[4] This reference suggests that in the justice's view Rule 219 should be construed to apply not only to the type of case specified in the rule, where a single indictment charges two or more offenses, but also to a case where there are two or more indictments, each charging a separate offense. If this is a correct interpretation of the justice's view, it should be noted that in the lead opinion, Mr. Justice EAGEN has expressed a contrary view, being "constrained to note the absence in this jurisdiction of any rule of criminal procedure covering the joining or severing of two or more indictments." *Commonwealth v. Peterson, supra* at 192, 307 A. 2d at 266. *See* footnote 3, *supra.*

joined by Nix and Manderino, JJ.) agreed with the lead opinion (and disagreed with the concurring opinion) that on the facts before them the two crimes were "so dissimilar that it would be prejudicial error to admit evidence of one offense at a separate trial of the other." *Id.* at 204, 307 A. 2d at 273. In these circumstances, they said, "[t]he more logical and certainly the more just rule is . . . that defendant should have, on timely motion, an absolute right to severance of the offenses." *Id.* "Indeed," they suggested, "a review of the relevant case law" shows that "this rule is, in fact, to a great extent, being followed today." *Id.*[5]

Given this division of the Supreme Court it is not apparent what is the Pennsylvania rule where the crimes although easily separable are not such that evidence of one would be admissible at a separate trial of the other. It is apparent, however, that all the justices are in agreement that consolidation is proper (*i.e.,* the trial judge will not abuse his discretion by denying a motion for severance) if the crimes are both easily separable and are such that evidence of one would be admissible at a separate trial of the other.

In the present case the first of these conditions was plainly satisfied, for the evidence was so simple that there was little danger that the jury would be confused in deciding what parts of it pertained to which crime; and some reflection will show that the second condition was equally plainly satisfied.

At a separate trial for the shooting the Commonwealth could have offered evidence of the wine bottle assault to prove that appellant's motive in shooting

---

[5] *Cf.* our decision in *Commonwealth v. Mullen,* 228 Pa. Superior Ct. 207, 212, 324 A. 2d 410, 413 (1974): "When the evidence of one crime is not relevant to one of the above exceptions [*i.e.,* motive, intent, absence of mistake, common plan, or identity], its admission creates an intolerable risk of prejudice: Commonwealth v. Wable, 382 Pa. 80, 114 A. 2d 334 (1955)."

Mrs. Green was to prevent her from testifying that he had hit her with a wine bottle, and also to rebut appellant's defense that the shooting had been an accident. *Commonwealth v. Wable, supra.*

At a separate trial for the wine bottle assault the Commonwealth could have offered evidence of the shooting as an admission of guilt by conduct. "Evidence of another crime is proper where it is relevant to a showing of the defendant's guilt of the crime charged, irrespective of whether the other crime is similar to, or different from, the crime charged. This evidence is particularly useful when it tends to show that the defendant committed another crime to enable him to commit or conceal the one for which he is being tried." Wharton's Criminal Evidence §241 (13th ed. 1972) (footnotes, collecting authority from many jurisdictions, omitted). *Accord,* McCormick, Evidence §190 at 451 (2d ed. 1972).

It may be granted that in the usual statement of the rule respecting proof of another crime, *e.g., Commonwealth v. Wable, supra,* there is no specific reference to proof of a crime committed to conceal the commission of another crime. It must be remembered, however, that the situations to which there is specific reference (motive, intent, absence of mistake, common plan, and identity) are illustrative and not exclusive; as has been noted, in *Commonwealth v. Peterson, supra,* it was said that they may all be summarized "[i]n other words [as situations] where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other." *Id.* at 197-98, 307 A. 2d at 269. Here there is such a logical connection. The reason for usually excluding proof of another crime is that usually the proof only shows the defendant's bad character; proof of bad character does not support an inference of guilt. When, however, a defendant commits one crime to conceal his

64

commission of another crime, the proof of the one crime does support an inference of guilt of the other.

Although there seems to be no Pennsylvania decision directly in point, there are decisions from other jurisdictions that recognize this principle. Thus in Illinois evidence of an attempt to escape from custody has been admitted. *See, e.g., People v. Gambino,* 12 Ill. 2d 29, 145 N.E. 2d 42 (1957); *People v. Spaulding,* 309 Ill. 292, 141 N.E. 196 (1923), and cases cited therein. Likewise the Oregon Supreme Court has held that evidence of the theft of a car to effectuate flight and the transportation of a sixteen year old girl over a state line during that flight is admissible at the trial of the crime from which the defendant was fleeing. *State v. Brown,* 231 Ore. 297, 372 P. 2d 779 (1962).

Accordingly, since in the present case proof of each of the two crimes would have been admissible at a trial of the other, and the crimes were sufficiently distinct that the probability of confusion by the jury was small, it was not prejudicial to appellant to consolidate the indictments.

The judgments of sentence are affirmed.