## Commonwealth v. Maras

*Brooks Smith*, for Commonwealth.
*Ralph T. Forr*, for defendant.

SHAULIS, J., October 17, 1979—This matter is before the court on defendant's omnibus pretrial motion for relief.

• • •

Included in his omnibus motion for pretrial relief is the defendant's motion for severance. This motion should be disposed of in two parts: (1) Should severance be granted and (2) if so, how many separate trials should be granted?

The case involves 16 separate informations filed to 16 different criminal actions lodged against defendant [a licensed doctor of osteopathic medicine]. Three different undercover agents of the Bureau of Drug Control were involved with the alleged offenses: four of the informations charge defendant with making illegal transactions with agent Albert R. Lumpkin; two allege dealings with agent Glen D. Hollier; and ten involve transactions with agent Thomas G. Mills. It is the general contention of defendant that each of the alleged violations was separate and distinct and should not be consolidated for trial. Defendant suggests that consolidation would prejudice his defense in that the jury would be confused, in that separate defenses might be raised to the individual offenses, and that there was no common scheme or plan involved so as to justify consolidation of these cases.

Initially, it would be appropriate to generally discuss joinder and severance of criminal cases. The American Bar Association Project on Minimum Standards Relating to Joinder and Severance (approved draft, 1968) section 2.2, takes the position that a defendant should have an absolute right to severance upon timely motion. In Com. v. Peterson, 453 Pa. 187, 307 A. 2d 264 (1973), the dissenting opinion of Justice Roberts (joined by Nix and Mandarino, JJ.) took this same position. However, the plurality opinion did not accede to that approach. In its handling of Com. v. Peterson, supra, the Pennsylvania Supreme Court only partially answered

the question concerning severance of the individual counts against a criminal defendant.

Accordingly, subsequent clarification was in order. That clarification came one year later in an opinion of the Pennsylvania Superior Court. That court said:

"The test of whether consolidation is proper is related to the test of whether evidence of one crime may be admitted at the trial of another. The present rule in Pennsylvania is that consolidation is proper (i.e. the denial of a motion for severance would not be an abuse of discretion) if (1) the facts and elements of the two crimes are easily separable in the minds of a jury; and (2) the crimes are such that the fact of each crime would be admissible as evidence in a separate trial for the other." Com. v. Irons, 230 Pa. Superior Ct. 56, 326 A. 2d 488 (1974).

The decision of whether or not to grant severance rests within the sound discretion of the court. "It is well established that decisions with regard to consolidation or severance of indictments for trial are matters of discretion with the trial judge, whose conclusions will be reversed only for a manifest abuse of discretion or prejudice and injustice to the defendant." Com. v. Fiorini, 257 Pa. Superior Ct. 185, 189, 390 A. 2d 774, 775 (1978), citing Com. v. Loch, 239 Pa. Superior Ct. 331, 361 A. 2d 758 (1976).

The first prong in the test as articulated in Com. v. Irons, supra, requires a determination of the effect the cases would probably have upon a jury. It is important to find out whether a single jury would be able to understand and separate the issues being tried in a consolidated proceeding. They should be able to isolate each charge and make a judgment

upon them. They should not be placed into a situation where they would use testimony of one charge in helping to resolve another. Now, this does not mean that multiple charges can never be consolidated, it only means that the issues in a consolidated trial should be individually identifiable.

In the present case, there were 16 separate transactions involved. The question is whether a jury could separate evidence of one transaction from the others. An important factor in making this determination is the proximity of time and place. The events in these cases spanned nearly 11 months. The transactions involved allegedly took place on the following dates in 1978: January 6, 26; February 22, 23, 24; March 21, 23, 24; April 21; May 26; June 30; August 1; September 5; October 10; November 14; and December 9. It is plain enough that several of the events were close together, but many were at less frequent intervals. While it is possible that a jury could effectively separate the elements of the individual events, it appears more likely that they could not. Additionally, the three undercover agents when testifying could only serve to further confuse the jury. It would not only be necessary for the jury to separate each event, but they would also have to group certain of them together for purposes of understanding which agent was involved at a given time.

In Com. v. Wabble, 382 Pa. 80, 114 A. 2d 334 (1955), the court held that when two crimes have common characteristics and their proximity in time and place are close, the proof of one may well have qualified it for admission at the trial of the other. In Com. v. Brown, 227 Pa. Superior Ct. 410, 323 A. 2d 223 (1974), the court was dealing with the rapes of two women on consecutive days in the same neighborhood. There they held severance not

to be necessary because the two crimes were so amazingly similar that they showed a common plan or scheme or a modus operandi. In Com. v. Jones, 242 Pa. Superior Ct. 303, 363 A. 2d 1281 (1976), appellant had been convicted by a jury of two counts of delivery of heroin. Appellant contended that severance should have been granted following her pretrial motion. In that case, the Commonwealth had relied primarily on the testimony of Brenda Townes, an undercover agent of the Bureau of Drug Control. The two heroin sales were to agent Townes and came about two hours apart on the same night. Again, this case involves a closeness of proximity in time and place that is not found in our present situation. There the denial of severance was affirmed on the appeal. Here it would seem that severance is in order because it is doubtful that a jury could evaluate each charge individually without being influenced by the testimony involved in the others. If it could be reasonably concluded that the jury could separate the various crimes, then the first of the conditions for consolidation would have been satisfied.

A discussion of the second condition of the test now appears in order, which test requires that the evidence of one of the crimes be admissible in the trials of the other offenses had there been separate trials. The general rule concerning evidence of other crimes is set forth by the Superior Court. The court said; Com. v. Jones, supra, at 308:

"Generally, evidence of another crime is inadmissible . . . However, evidence of another crime is generally admitted when it tends to prove (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan, or design involving incidents so related to each other that proof of

one tends to prove the other; or (5) to establish the identity of the person charged with the commission of the crime on trial."

In the present case, it seems that the facts would merit the admission of evidence of the offenses. Clearly, they could be used to show intent, absence of mistake, a common scheme, or identity; but this alone is not reason enough to consolidate the cases. There is reason to believe the jury would be confused if presented with all 16 charges. Therefore, the correct procedure would be to reduce the number of cases any one jury would have to deal with down to such a number that the potential confusion is removed. It would seem that severance of all 16 cases would not be necessary. After all, it is probable that evidence of some of the others would be admissible in any one trial anyway. However, a severance according to the particular undercover agent involved would seem to be proper. This would clearly serve the dual purpose of reducing the number of counts presented to any one jury, but more importantly, it would not involve a compounding of the complexity of the facts involved. The jurors should be able to keep the events involved clear in their minds. This is important as notes by jurors are not permitted and they must rely upon their memories and the evidence admitted. They should not be asked to sort through the testimony of three agents and required to keep things neatly separated. It is very doubtful that this could be accomplished. Severance should be granted to allow three trials.

Defendant's fourth motion is a "Motion to Quash the Information and Suppress the Evidence Seized." The motion is based on the mistaken belief that no affidavit has been taken in support of the

administrative warrant. A careful examination of the warrant and supporting documents reveals that the warrant was properly issued and executed.

We have some reservations about the use of an administrative inspection warrant instead of a regular search warrant where the purpose of the seizure is for use in prosecutions such as this one. Section 24 of The Controlled Substance, Drug, Device and Cosmetic Act of April 14, 1972, P.L. 233, 35 P.S. §780-124, clarifies the purposes for which such administrative inspection warrants can be issued and executed. The relevant portion reads as follows, 35 P.S. §780-124(b)(1):

"For the purpose of inspecting, copying and verifying the correctness of records, reports, or other documents required to be kept or made under this act and otherwise facilitating the carrying out of his functions under this act, the secretary is authorized, in accordance with this section, to enter controlled premises and to conduct administrative inspections thereof, and of the things specified in this section, relevant to those functions."

We have found no appellate decisions on this point dealing with The Controlled Substance, Drug, Device and Cosmetic Act; however, in Com. v. Shults, 26 Pa. Commonwealth Ct. 129, 362 A. 2d 1129 (1976), the court was faced with a situation where the Commonwealth had initiated contempt proceedings against the defendant for his refusal to comply with an administrative subpoena issued and served by the Bureau of Consumer Protection. The lower court entered the contempt order and the defendant appealed. Defendant contended that he should not be compelled to comply with the administrative subpoena because the Bureau was en-

gaging in a "fishing expedition" and gathering information for planned criminal prosecution of him. The Commonwealth Court refused to quash the subpoena, holding that it had been issued as a valid exercise of the Bureau's authority, that it was sufficiently definite and that it was seeking relevant information. This was the test set forth by the United States Supreme Court in United States v. Morton Salt Co., 338 U.S. 632, 70 S. Ct. 357, 94 L. Ed. 401 (1950). The Commonwealth Court went on to address the issue of pending criminal litigation and concluded that the materials gathered by the administrative subpoena could not be used in a subsequent proceeding because the Bureau involved had not been granted any enforcement powers.

While the Consumer Protection Act contains a similar clause with respect to the use of administrative subpoenas and administrative inspection warrants, it would appear that the difference may be in the power of enforcement given in the Drug Act which is not present in the Consumer Protection Act.

In Com. v. Kittner, 20 Bucks 171 (1969), the court had occasion to consider the question of the suppression of certain evidence obtained as a result of an inspection of a pharmacist's records under The Drug, Device and Cosmetic Act of September 26, 1961, P.L. 1664, sec. 1, 35 P.S. §780-1 et seq. (now repealed), and the court refused to suppress the evidence holding that the statute requires the records involved to be maintained and kept available for inspection by the Secretary of Health or his agents. It would appear that the preceding statute was essentially for the same purpose with the present statute being more inclusive.

We conclude that the evidence obtained by the administrative inspection warrant is admissible and the motion to suppress must be denied.

There is a final aspect of defendant's omnibus pretrial motion that must be disposed of. This involves the motion for individual voir dire of prospective jurors. The question now is whether this matter was properly included in the pretrial motions so as to require final disposition at this time.

It should be noted that the Pennsylvania Rules of Criminal Procedure do not specify what should be included in the omnibus motion. However, the comment to Rule 306 does list nine types of relief that should be included. While the list is not exclusive, it does not include a request for individual voir dire of jurors.

Initially, it must be recognized that the Pennsylvania Rules of Criminal Procedure require that individual voir dire be conducted only in capital cases: Pa.R.Crim.P. 1106(e). "The question of whether individual and closed voir dire is necessary in non-capital cases rests within the sound discretion of the trial judge." Com. v. Herron, 243 Pa. Superior Ct. 319, 330, 365 A. 2d 871 (1976).

In a situation where there has been substantial pretrial publicity, it may be appropriate to have an individual voir dire of the jurors. In Silverthorne v. United States, 400 F. 2d 627 (9th Cir. 1968), there was voluminous pretrial publicity. Every prospective juror had some knowledge of the case. Under these circumstances, the Ninth Circuit Court of Appeals held that the trial judge should have used individual voir dire. However, in a later case, that same court had the occasion to elaborate on their decision in Silverthorne, supra. The court was dealing with a situation where the pretrial publicity

was not as great as it was in Silverthorne, and there it concluded:

"The court closest to the situation can best evaluate the proper way to walk the difficult line between a vigorous voir dire to determine any possible bias and avoidance of creating bias by specific questions which add 'fuel to the flames' in suggesting the presence of controversial issues." United States v. Polizzi, 500 F. 2d 856, 880 (9th Cir. 1974).

Therefore, it would seem that this matter would be best disposed of by allowing the trial judge to make his evaluation of the situation at the time of trial.

### ORDER

Now, October 17, 1979, defendant's motion for change of venue, and motion to quash the information and suppress the evidence are denied. The motion for severance is allowed to the extent that three separate trials shall be scheduled, each involving the testimony of a separate undercover agent.

The motion for individual voir dire of jurors is reserved for determination by the trial judge.