COMMONWEALTH of Pennsylvania,
Appellee

v.

Kareem JONES, Appellant.

Superior Court of Pennsylvania.

Submitted June 8, 2004.

Filed Aug. 25, 2004.

Reargument Denied Oct. 27, 2004.

Scott F. Griffith, Philadelphia, for appellant.

Hugh J. Burns, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before: KLEIN, OLSZEWSKI, and KELLY, JJ.

OLSZEWSKI, J.:

¶ 1 This is an appeal from a judgment of sentence against appellant for three violations of the uniform firearms act (VUFA). We affirm in part and reverse and remand in part. The facts of this case are as follows:

Officer Thomas Peters testified that in the morning of November 10, 2000, he was working as a plainclothes officer with his partner, Officer Gary Harkins. He received information over the police radio regarding a suspect in the vicinity where they were driving, Eighth and Mercy Streets in Philadelphia. They saw appellant, who matched the description, being the same height, wearing the same clothing and hairstyle. The officers approached appellant and identified themselves as police. Immediately, appellant began to run. The officers gave chase. Officer Peters was directly behind him by no more than ten to fifteen feet throughout the chase. At one point, from about three feet behind appellant, Officer Peters saw appellant reach into the front of his pants and then with his right hand pull out and drop a black gun to the curb. Appellant continued to run and hid himself in an alley behind a row of abandoned houses. Officer Peters radioed to his backup exactly where the gun had been dropped and indicated he needed assistance chasing appellant. Within minutes backup arrived but appellant had hidden himself well. After it seemed the police left the area, appellant, who had been hiding on the roof, began to descend using a tree leaning near the roof. Officer Peters surprised him when he reached the bottom and he

ran again. Backup officers were able to apprehend him about one block away in the 700 block of Winton Street.

Officer Anthony Crawford testified that he was responding to the radio call of a man with a gun when he heard Officer Peter's call that the suspect, whom he was chasing, dropped the gun near 7th and Cantrell Streets. Shortly thereafter, Officer Crawford found the gun and prepared the related property receipt. The gun was a black semi-automatic weapon with a clip containing four rounds of live ammunition.

Trial Court Opinion, 10/6/2003 at 1–3.

¶ 2 Appellant was charged with violating 18 Pa.C.S.A. § 6105, persons not to possess, use, manufacture, control, sell or transfer firearms; 18 Pa.C.S.A. § 6106, firearms not to be carried without a license; and 18 Pa.C.S.A. § 6108, carrying firearms on public streets or public property in Philadelphia. Appellant's first two trials in this matter ended in a mistrial. Appellant was found guilty of all charges in his third trial. Appellant was sentenced to an aggregate term of incarceration of eight and one-half to seventeen years. This appeal followed.

¶ 3 Appellant raised three issues for our review. First, appellant argues that the trial court erred by providing the jury with an illustration of reasonable doubt during a re-reading of the jury charge. Our standard of review of a jury charge is well settled. "We will not rigidly inspect a jury charge, finding reversible error for every technical inaccuracy ... rather [we] evaluat[e] whether the charge sufficiently and accurately apprises a lay jury of the law it must consider in rendering its decision." *Commonwealth v. Thompson*, 543 Pa. 634, 674 A.2d 217, 218–19 (1996). "[W]e must review the charge as a whole." *Commonwealth v. Spotz*, 563

Pa. 269, 759 A.2d 1280, 1290 (2000). "Error cannot be predicated on isolated excerpts of the charge ... it is the general effect of the charge that controls." *Commonwealth v. Pursell*, 555 Pa. 233, 724 A.2d 293, 314 (1999). "An instruction will be upheld if it clearly, adequately and accurately reflects the law. The trial court may use its own form of expression to explain difficult legal concepts to the jury, as long as the trial court's instruction accurately conveys the law." *Commonwealth v. Johnson*, 572 Pa. 283, 815 A.2d 563, 580 (2002). "A verdict will not be set aside if the instructions of the trial court, taken as a whole, and in context, accurately set forth the applicable law." *Commonwealth v. Bracey*, 541 Pa. 322, 662 A.2d 1062, 1068 (1995).

■ ¶ 4 In the case *sub judice*, the trial court made the following charge to the jury on reasonable doubt:

[T]he Commonwealth has the burden of proving the defendant's guilt by proving every essential element of the offenses charged. And the Commonwealth must prove each of these elements beyond a reasonable doubt. A reasonable doubt is a doubt of such substance that if it occurred in connection with a matter of great importance in your own affairs, it would cause you to restrain from acting. Now, a reasonable doubt does not mean beyond all possible doubt, or beyond the shadow of a doubt, or to a mathematical certainty. A reasonable doubt is more than mere possible doubt or fanciful doubt or guess. Reasonable doubt must arise out of the evidence or out of the lack of evidence and not out of any extraneous matter. It must be a real doubt, and it may not be an imagined doubt or a manufactured doubt used to avoid carrying out an unpleasant duty. If you believe a reasonable doubt exists as to the guilt of the defendant or as to

any of the facts upon which his guilt depends, then it will be your duty to find the defendant not guilty. If you do not find reasonable doubt, then it is your duty to find the defendant guilty.

N.T. 3/12/2003 at 127–28. During deliberations, the jury requested clarification on the above charge. The trial judge re-read his original charge on reasonable doubt after which he stated:

Now, an example that the Court sometimes thinks of in terms of reasonable doubt to illustrate reasonable doubt, if you went down to Market Street at noon, and decided that you wanted to cross in the middle of the street, you might have, with all the traffic going back and forth at a very fast pace and things of this nature, you might have a reasonable doubt as to whether or not you could get across the street without being hit by a car.

However, if you go there at midnight, and there are no other cars there, and you look back and forth, then it would not be reasonable at that point, in the Court's estimation, to think that you might get hit by a car. It doesn't mean you might not, but generally speaking it would be reasonable to think that you might get hit at noon, not reasonable to think you might get hit at midnight when there is no traffic.

Does that help anybody? All right. You may resume your deliberations.

N.T. 3/13/2003 at 7. Appellant objected to the use of the illustration and now seeks a new trial on all charges because, as appellant argues, the illustration was "confusing and inept, littered with double negatives, ... leav[ing] even those with advanced knowledge of the law wondering 'just what is the Commonwealth's burden?'" Appellant's Brief at 13. We disagree.

■ ¶ 5 "When a jury submits a question to the court indicating a need to have a matter clarified, the court may properly respond thereto." *Commonwealth v. White*, 492 Pa. 489, 424 A.2d 1296, 1299 (1981). "Many trial judges employ concrete illustrations to help make clear to the jury what the issues are which the jury is to decide and how to apply legal principles to the facts so as to reach a just verdict." *Commonwealth v. Malone*, 354 Pa. 180, 47 A.2d 445, 448 (1946).

> In the well-known case of *Com. v. Harman*, 4 Pa. 269, Chief Justice Gibson in charging the jury used an illustration to make clear to the jury why evidence should not be discredited because it was circumstantial, and that even so-called 'positive' evidence was to a certain degree inferential in nature, i.e., circumstantial. In the famous case of *Com. v. Webster*, 5 Cush., [59] Mass., 295, 311, 52 Am.Dec. 711 Chief Justice Shaw of Massachusetts used the following simple illustration to instruct the jury as to the nature and value of circumstantial evidence: 'When footprints are discovered after a recent snow, it is certain that some animated being has passed over the snow since it fell; and, from the form and number of footprints, it can be determined with equal certainty, whether they are a man, a bird, or a quadruped.'

*Id.* at 449 n. 4. *See also, Commonwealth v. White*, 492 Pa. 489, 424 A.2d 1296 (1981) (holding that illustration in charge offered clarity to the jury); *Commonwealth v. Hobson*, 484 Pa. 250, 398 A.2d 1364 (1979) (holding that charge with illustration, when read as a whole, did not prejudice defendant); *Commonwealth v. Fuller*, 396 Pa.Super. 605, 579 A.2d 879 (1990) (illustrating concepts of "intentional," "knowing," and "reckless" to the jury were not prejudicial when entire charge read as a whole).

¶ 6 In *Commonwealth v. Fisher*, 572 Pa. 105, 813 A.2d 761 (2002) (plurality opinion), the trial judge provided the jury with the following charge on reasonable doubt which included an illustration:

> Although the Commonwealth has the burden of proving the Defendant guilty beyond a reasonable doubt as to each and every charge, this does not mean that the Commonwealth must prove it beyond all doubt or to a mathematical certainty or to a hundred percent or beyond a peradventure of doubt or any other untoward and impossible burden, nor must the Commonwealth demonstrate the complete impossibility of innocence.

> Now, what is reasonable doubt? A reasonable doubt, a word that I have used throughout this charge, is a doubt that would cause a reasonably careful and sensible person to pause and hesitate before acting upon a matter of importance in his or her own affairs. Let me repeat it. A reasonable doubt is a doubt that would cause a reasonably careful and sensible person to hesitate before acting upon a matter of importance in his or her own affairs.

> * * *

> Let me put it in a civil context for you. Suppose you and your wife, you and your husband were arguing back and forth whether or not to send a child of yours to private school, sending your child to private school at considerable havoc to your personal budget, and if you did send this child to a private school, it would be a considerable inconvenience to you and sacrifice. And you were arguing back and forth as to the pluses of going to private school, small classes, individual attention, ability to participate in all of the activities and maybe the greater demands and more

personal instructions versus a wider distribution of persons from all areas of the community versus the better equipment that may be provided by the public tax dollars and, perhaps, the ability to get rubbed up a little bit with all levels of society versus not so. And suppose, after discussing this with your wife or your husband, as the case may be, after two weeks, you really didn't make any determination whether you wanted to send the kid to private school or not. But suppose you continued on this discourse and you talked about it for another two weeks. And suppose after two weeks had transpired, you came to the firm conclusion that it was more advantageous to send this child to private school, even though it was going to cause some havoc to your personal budget but that the advantages outweighed the disadvantages and you were firmly committed to send this child to private school. It was at this point in this very important decision in your own private lives that, after great logic, reasoning and rationale and everything else being applied to this particular problem, that you came to the firm conclusion that you were going to send this child to private school. It would be at that point, after you had come to that firm conclusion, you had done something about it, that you would have gone beyond reasonable doubt.

So, to summarize, you may not find the Defendant guilty based on a mere suspicion of guilt. The Commonwealth has the burden of proving the Defendant guilty beyond a reasonable doubt. If it meets that burden, then the Defendant is no longer presumed to be innocent and you should find him guilty. On the other hand, if the Commonwealth does not meet its burden, then you should find him not guilty.

The Commonwealth's burden, as I said, is to prove the Defendant's guilt beyond a reasonable doubt, but it does not mean that the Commonwealth must prove the utter impossibility of the Defendant's innocence or the Defendant's guilt to a mathematical certainty, nor must it prove the Defendant's guilt beyond all doubt. The Commonwealth's burden to prove the Defendant guilty beyond a reasonable doubt does not mean that the Commonwealth must prove the Defendant's guilt to a moral certainty.

A reasonable doubt cannot be fancied or conjured up in the minds of the jury, as I said, to escape an unpleasant duty. It must be an honest doubt arising from the evidence, itself, the kind of doubt that would restrain a reasonable man from acting in a matter of importance to himself or herself, a reasonable woman.

*Id.* at 769–770. Our Supreme Court stated that the charge, read as a whole, clearly and accurately stated the law.

¶ 7 In the case *sub judice,* we decline to find that the trial court committed error *per se* when it provided the jury with an illustration of reasonable doubt. We also do not find fault with the illustration itself. It was straightforward. Every jury can relate to crossing a street. The judge's distinction between crossing the street at noon with a high volume of traffic versus crossing the same street at midnight when there would be little to no traffic was clear and understandable. Moreover, when the illustration is read with the remainder of the charge, we find that the charge, as a whole, is a clear and accurate statement of the law that does not afford appellant grounds for reversal of his judgment and sentence.

■ ¶ 8 In his next issue, appellant asserts that the trial court abused its discretion by sentencing appellate to a term in excess of the aggravated range. We find

this issue waived. Appellant did not preserve the issue with either an objection at sentencing or with a post-sentencing motion to modify sentence. We have held that "an objection to a discretionary aspect of a sentence is clearly waived if it was neither raised at the sentencing hearing nor raised in a motion to modify the sentence imposed at that hearing." *Commonwealth v. Petaccio*, 764 A.2d 582, 586 (Pa.Super.2000) *quoting Commonwealth v. Losch*, 369 Pa.Super. 192, 535 A.2d 115, 118 n. 6 (1987). *See also*, Pa.R.Crim.P. 720 (rule on post-sentence procedure in criminal matters, including procedure for motion to modify sentence).[1] We have reviewed the sentencing transcript and certified record in this case. No objections were made during sentencing, and appellant did not elect to file a post-sentence motion. Thus, the issue is waived.

¶ 9 In his final issue, appellant claims that the trial court erred when it failed to grant appellant's motion to sever the 18 Pa.C.S.A. § 6105 VUFA charge from the remaining VUFA charges. Section 6105 prohibits persons who have been convicted of certain offenses from possessing, using, manufacturing, controlling, selling, or transferring firearms. It is essential for the Commonwealth to present evidence to the fact-finder that appellant had a prior conviction. The two remaining charges did not require evidence of a prior conviction. Appellant argued to the trial court that prosecuting the three charges together would prejudice appellant because the jury would become aware of his prior conviction, which was irrelevant to two of the charges. The trial court disagreed and denied the motion.

¶ 10 Before reaching the merits of appellant's argument, we must address the

Commonwealth's argument that appellant did not preserve the issue for appeal. Appellant raised the issue of severance prior to his second trial which ended in a mistrial. The third trial resulted in appellant's conviction; however, appellant did not raise the severance issue prior to his third trial. Citing to *Commonwealth v. Mulholland*, 549 Pa. 634, 702 A.2d 1027 (1997), the Commonwealth argues that appellant waived this issue because the appellant did not present a motion to sever prior to the third trial. In *Mulholland*, our Supreme Court stated that proceedings revert to a pre-trial status when a case ends in a mistrial and re-prosecution is not barred. In response, appellant cites *Commonwealth v. Henderson*, 513 Pa. 296, 520 A.2d 1372 (1987), for the proposition that the ruling prior to the second trial was binding on the court during the third trial because appellant did not have new evidence to present to the court. Our Supreme Court stated in *Henderson* that pre-trial suppression rulings are binding on subsequent re-trials unless the defendant has new evidence. The Commonwealth argues that *Henderson* is inapplicable because the issue at hand is severance, not suppression. A review of the relevant case law leads us to the conclusion that the issue has not been waived.

¶ 11 Suppression was the issue before our Supreme Court in *Commonwealth v. Lagana*, 510 Pa. 477, 509 A.2d 863 (1986). Therein, two charges were brought against the defendant using evidence obtained in a single search and seizure. The charges were brought before the court in two separate trials. Prior to trial on the first charge, defendant successfully presented a motion to suppress the evidence. As a result, the Commonwealth elected to *nol*

---

1. *Commonwealth v. Petaccio*, 764 A.2d 582 (Pa.Super.2000), discusses former Pa. R.Crim.P. 1410 which was renumbered Rule

720 March 1, 2000, effective April 1, 2001. *See id.* at 586.

*pros* the charge. One week later, the defendant was before the court on the second charge. Again, the defendant presented a motion to suppress the evidence. The second trial court determined that the findings of fact and conclusions of law of the first trial court were binding on the court's consideration of the second motion to suppress; thus, the second motion was also granted. The Commonwealth appealed the second suppression order, and our Supreme Court stated:

> where two prosecutions arise out of a single search and/or seizure, a decision by a suppression judge during the first prosecution can, upon the motion of the previous prevailing party, become part of the second prosecution. The party against whom this decision is being offered may offer any new evidence which was previously unavailable. *See generally* Pa.R.Crim.P. 323(j). Absent such new evidence the suppression judge in the second prosecution **must** adopt the findings and conclusions of the first judge, and incorporate them into the record.

*Id.* at 866 (emphasis added).

¶ 12 In *Henderson, supra,* the defendant was charged with two offenses in a single criminal matter. Prior to trial, the defendant presented a motion to suppress, which the court denied. The matter ended in a mistrial, and the Commonwealth chose to prosecute the case a second time. Before his second trial, defendant renewed his motion to suppress. The court denied the motion without a hearing because defendant had not alleged any new evidence for the court's consideration. On appeal, our Supreme Court stated that it was proper for the trial court to give collateral estoppel effect to the first suppression court decision, citing the Supreme Court's recent decision in *Lagana, supra.*

¶ 13 In *Commonwealth v. Starr,* 541 Pa. 564, 664 A.2d 1326 (1995), the defendant sought the court's permission to proceed *pro* se. Following a hearing and thorough colloquy on whether defendant knowingly and voluntarily waived his right to counsel, the trial court granted defendant's motion. The case was assigned to a second judge, who heard further pre-trial motions and conducted his own colloquy on defendant's request for self-representation. The second judge revoked the first judge's order permitting defendant to proceed *pro se* because, in the second judge's opinion, the defendant "[did] not [express] what the Court considers an adequate reason to give up his constitutional right to have a competent attorney represent him." *Id.* at 1334 *quoting* N.T. 8/15/88 at 60 (changes in original). Before deciding whether the second judge erred, our Supreme Court thoroughly examined the coordinate jurisdiction rule and the law of the case doctrine. In its discussion, the Court stated that the law of the case doctrine is "a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of the same court or by a higher court in the earlier phases of the matter." *Id.* at 1331, citing 21 C.J.S. Courts § 149a; 5 Am. Jur. 2d Appeal and Error § 744. A variety of rules make up the law of the case doctrine, including the rule that "upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor court." *Id.* at 1331. The coordinate jurisdiction rule dictates that "once a matter has been decided by a trial judge the decision should remain undisturbed, unless the order is appealable and an appeal therefrom is successfully prosecuted." *Id.* at 1331, citing *Golden v. Dion & Rosenau,* 410 Pa.Super. 506, 600 A.2d 568, 570

(1991). The purpose of the rule is to foster finality of pre-trial rulings to promote judicial economy and efficiency. *Id.* The coordinate jurisdiction rule "applies in all cases except where newly-discovered evidence or newly-developed legal authority compel a result different than that reached by the first judge." *Id.* at 1332, *citing Musumeci v. Penn's Landing Corporation,* 433 Pa.Super. 146, 640 A.2d 416, 419 (1994). The Court found that purposes and limitations of the coordinate jurisdiction rule and the law of the case doctrine were sufficiently similar to allow incorporation of the former into the latter. Applying the expanded law of the case doctrine to the facts of *Starr,* the Supreme Court held that a second trial judge's revocation of the first judge's order was an abuse of discretion as a matter of law because the second judge's order "undermined each of the polices and purposes behind the law of the case doctrine." *Id.* at 1334.

¶ 14 In contrast to its decision in *Starr,* our Supreme Court held that the ruling on a change of venue or venire in *Mulholland, supra,* was not determinative of the law of the case and, therefore, did not have a collateral estoppel effect on relitigating the issue when the case was tried a second time. The defendant in *Mulholland* successfully persuaded the trial court to select a venire from another county due to overwhelming pre-trial publicity.[2] The case ended in a mistrial. In subsequent motions, the trial court found that the previously litigated issue of venue and venire was binding in the event of a retrial. On appeal, the Supreme Court held that both venue and venire must be reconsidered because the facts governing the issue may change between the first and second trial.

As time elapses, the media attention given any particular trial will vary in content as well as pervasiveness. The attendant circumstances surrounding a particular trial which give rise to media interest will also vary with time. It certainly cannot be said that the facts and issues involved with the question of venue or venire will be substantially the same when [the case is retried as they were at the time of the first trial] when the question was originally addressed. *Mulholland* 702 A.2d at 1036.

¶ 15 The rules set forth in *Lagana; Henderson; Starr,* and *Mulholland,* lead us to conclude that in the case *sub judice,* the second trial court's denial of appellant's motion to sever charges was binding on the third trial court. The ruling was determinative of the law of the case. Unlike *Mulholland,* the facts warranting severance of the charges were identical prior to both the second and third trials because the alleged prejudice to appellant would not arise until the jury heard evidence of appellant's prior conviction. Appellant did not have new evidence for the trial court's consideration, nor had there been a change in legal authority. Finding that the issue of severance was not waived, we turn to the merits of appellant's argument that the trial court erred by denying his motion.

■■■ ¶ 16 It is axiomatic that a VUFA charge under 18 Pa.C.S.A. § 6105, former convict not to possess a firearm, requires evidence that the defendant was previously convicted of a crime. In this case, appellant was charged with three VUFA violations including violation of § 6105. The other charges against appellant did not require evidence of a prior conviction. Believing that he would be prejudiced on the

---

**2.** The defendant in *Mulholland* filed a motion for change of venue or, in the alternative, change of venire.

remaining charges once the jury heard evidence of his prior conviction, appellant filed a motion to sever the charges. The trial court denied the motion.

¶ 17 The severance issue in this case is analogous to those in *Commonwealth v. Carroll*, 275 Pa.Super. 241, 418 A.2d 702 (1980); *Commonwealth v. Galassi*, 296 Pa.Super. 126, 442 A.2d 328 (1982), and *Commonwealth v. Neely*, 298 Pa.Super. 328, 444 A.2d 1199 (1982). In each of those cases, the defendant faced a § 6105 charge as well as other charges that did not require evidence of a prior conviction. Motions to sever the charges were presented and denied by the trial courts. On review, we held in each case that the trial court had abused its discretion. Specifically, in *Carroll*, defendant was charged with recklessly endangering another, disorderly conduct, possession of a prohibited offensive weapon, and two VUFA charges including violation of § 6105. Defendant requested severance of the § 6105 charge. The trial court denied the request, and defendant was convicted on all counts. On appeal we stated that

> there is no question that appellant was prejudiced in this case. The crime of "Former convict not to own a firearm", requires the Commonwealth to show a previous conviction for a violent crime. Thus, where these charges are brought with others, clearly the jury is exposed to the fact that this particular defendant had previously committed a violent crime.

> Normally, in criminal trials, evidence of prior crimes committed by a particular defendant is not admissible and any reference to it constitutes reversible error. *Commonwealth v. Martin*, 479 Pa. 63, 387 A.2d 835 (1978). The purpose of this rule is to prevent the conviction of an accused for one crime by the use of evidence that he has committed other unrelated crimes, and to preclude the inference that because he has committed other crimes, he was more likely to commit that crime for which he is being tried. *Commonwealth v. Trowery*, 211 Pa.Super. 171, 173, 235 A.2d 171, 172 (1967).

The prejudice here is a bit different. Clearly the introduction of the fact of appellant's former conviction of a violent crime was required as an element of proof of the crime of "Former convict not to own a firearm."

Appellant claims that because of the nature of the proof required in that crime, it could not be consolidated with other charges, since then the prejudice of the introduction of his former conviction would spread to all the charges. We agree. We feel to reach any other result would be inconsistent with general principles of evidence admissible in a criminal trial.

Normally, evidence that a particular defendant committed a prior crime is admissible *only* where it tends to prove (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others, or (5) to establish the identity of the person charged with the commission of the crime on trial. *Commonwealth v. Irons*, 230 Pa.Super. 56, 326 A.2d 488 (1974). Clearly here the evidence of appellant's former crime does not satisfy any of these criteria. Thus following normal evidentiary principles, we believe the severance should have been granted.

However, the denial of a motion for severance is not an abuse of discretion if the facts and elements of the two crimes are easily separable in the minds of the jurors and if the crimes are such that

the fact of commission of each crime would be admissible as evidence in a separate trial for the other. *Commonwealth v. Terrell*, 234 Pa.Super. 325, 339 A.2d 112 (1975).

We believe this test to be inapplicable to our situation. Here, we are presented with a crime which, as part of the proof, requires proof that the appellant had previously committed a violent crime. Clearly the fact that appellant committed the former violent crime, is of no evidentiary value to the proof of *any* of the other crimes with which he is so charged; its only relevance is to satisfy the requirements of "Former convict not to own a firearm".

*Carroll*, 418 A.2d at 704. We remanded for a new trial on all charges. In *Galassi, supra*, the defendant faced two VUFA charges, including a § 6105 violation. The trial court denied the request to sever. On appeal, we quoted our analysis in *Carroll, supra*, and held that defendant was entitled to a new trial on all charges. Finally, in *Neely, supra*, the defendant was charged with attempted robbery, aggravated assault, and a § 6105 violation. We stated that "unless evidence of prior criminal conduct is otherwise admissible—for instance, to prove intent, identity, motive, or a common scheme—a trial court should grant a defendant's motion to sever the charge of former convict not to own a firearm from the other charges." *Id.* Judgment of sentence on the § 6105 charge was affirmed, but we remanded the remaining charges for a new trial.

¶ 18 On review of this well-settled area of law, we are constrained to find that the trial court abused its discretion. It is without question that appellant was prejudiced on the charges that did not require evidence of his prior conviction. We do not believe, however, that appellant suffered any prejudice on the § 6105 charge.

Thus, judgment of sentence for the § 6105 charge is affirmed. The judgments of sentence on the remaining charges are reversed and remanded for a new trial.

¶ 19 AFFIRMED in part; REVERSED and REMANDED in part. Jurisdiction relinquished.

¶ 20 Concurring and Dissenting Opinion by KLEIN, J.

KLEIN, J., concurring and dissenting:

¶ 1 I join in the majority opinion reversing the convictions of all but the charge prohibiting a convict from possession of a firearm under 18 Pa.C.S.A. § 6105 (VUFA). I agree that it was prejudicial and unnecessary to reveal to the jury that Jones had a prior conviction.

¶ 2 I also agree that the conviction for the VUFA charge of a convict possessing a firearm can stand, because there is no way to try that charge without revealing a defendant's prior convictions and therefore no prejudice for that charge.

¶ 3 However, I would reverse that VUFA charge for another reason. I disagree with the majority that there was no prejudice in the reinstruction of the jury on reasonable doubt. While I agree with the law cited by the majority, I do not think this example was a mere "technical inaccuracy" or that the rest of the charge accurately explains the law of reasonable doubt to the jury.

¶ 4 As noted by the majority, the trial judge had previously given a charge based on § 701 of the Pennsylvania Suggested Standard Criminal Jury Instructions, Pa. SSJI (Crim) § 701. As is not uncommon, the jury asked for clarification. Therefore, it is obvious that they were confused by the charge.

¶ 5 That is certainly not surprising. It points out the vital need to revamp our

jury instructions to make them understandable to a lay jury. People do not talk the way the charge is written. Most people do not use terms such as "fanciful doubt" or "imagined doubt" or "manufactured doubt." The fact that these instructions have survived appellate challenge does not mean that they have been approved by the appellate courts; it only means that they have escaped condemnation.[3]

¶ 6 When the jury asked for amplification of the reasonable doubt charge, the trial judge repeated generally the same language he used the first time. Because of the difficulty with the concept of reasonable doubt and convoluted language of the standard instruction on reasonable doubt, he followed up with an example, over objection to any example after the judge described what he was going to use. I agree that it is a very reasonable idea to give an example. However, it is important that the example be a good one. The example of the parents contemplating sending their child to private school is a good one. Some of the standard examples—buying a house but seeing a stain on the ceiling, needing an operation but not going through with it until one gets a second opinion, are also good examples. The one created by the trial judge is not.

¶ 7 I believe the appellant is correct when he states in his brief that the trial court's analogy is confusing, "and would leave even those with advanced knowledge of the law wondering 'just what is the Commonwealth's burden?' The court's anecdote served to do nothing more than to obfuscate the applicable burden of proof from the jury, and suggest a more lenient standard such as preponderance of the evidence." (Appellant's brief, p. 13.)

¶ 8 Certainly one does not want to take a chance on crossing the street in the face of a red light with cars whizzing by. This is not a "reasonable doubt" that one might get hit by the car—it is practically certain. Likewise, crossing in the middle of the night with no cars coming is hardly analogous to reasonable doubt—if one sees no cars coming, there is no doubt. The example has nothing to do with the concept or the standard charge, and only serves to confuse. Since the jury was confused by the standard language, reading it again does not "amplify" the instructions, as requested by the jury. The example not only fails to clear things up, but makes them more confusing.

¶ 9 Since this was a concern of the jury and was not rectified by the trial judge, I cannot say this could be considered harmless and, thus would reverse for a new trial on all charges.

---

3. I cannot claim credit for this phrase, much as I would like to do so. It was coined by someone with language skills superior to mine. However, try as I may, I have not been able to find the source of these words.