J-A03016-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| KENDRITH J. JONES | |
| Appellant | No. 515 MDA 2016 |

Appeal from the Judgment of Sentence March 9, 2016
In the Court of Common Pleas of Dauphin County
Criminal Division at No: CP-22-CR-006709-2014

BEFORE: LAZARUS, STABILE, and DUBOW, JJ.

MEMORANDUM BY STABILE, J.: **FILED MAY 24, 2017**

Appellant, Kendrith J. Jones, appeals from the March 9, 2016 judgment of sentence entered in the Court of Common Pleas of Dauphin County ("trial court") sentencing Appellant to a period of incarceration of five to ten years for persons not to possess, use, manufacture, control, sell or transfer firearms.[1] Upon review, we affirm.

The trial court summarized the factual history of the matter as follows.

Corporal McGarrity of the Harrisburg Police Department was on patrol around 1:00 am. in the Allison Hill section of Harrisburg on October 31, 2014. Allison Hill is a high drug and crime area of Harrisburg City.

While on patrol, McGarrity noticed a vehicle with a non-functioning driver's side taillight. He followed the vehicle for a

---

[1] 18 Pa.C.S.A. § 6105.

while and initiated a traffic stop once other units were nearby. Appellant took about a block and a half to pull over, despite there being plenty of opportunity to pull over prior to that.

McGarrity did not approach the vehicle immediately as he was waiting for back up, but he did observe Appellant, seated in the driver's seat, moving around a lot. Appellant's shoulders were moving up and down as if he were manipulating something in his lap. His left shoulder also dipped down as if he was reaching underneath the seat. These movements raised McCarty's [(sic)] suspicions, and created safety concerns.

McGarrity acknowledged that the movements could have been [Appellant] looking for proper documentation, but they were excessive and of such long duration that red flags were raised. [Appellant] had a freshly lit cigarette in his hand when McGarrity approached. He was visibly shaking and was unable to provide his license. The vehicle was registered to an Amber Uber. [Appellant] provided his name and date of birth.

McGarrity did warn the other officers about the movements he had seen because it was enough movement to raise his suspicions and he wanted to warn them. McGarrity ran the information and confirmed that [Appellant] had a valid license. He then returned to the car and notified [Appellant] about the faulty taillight. He did not issue a ticket.

McGarrity returned to his car but then called out to [Appellant] who had his ignition on and was ready to leave. [Appellant] responded and McGarrity re-approached. McGarrity explained that it was a high-crime area late at night and he had seen movements that raised his suspicions and he wanted to make sure nothing was amiss.

He asked [Appellant] if he had anything on his person or the vehicle and for consent to search. [Appellant] indicated consent to search his person and exited the vehicle. A pat down revealed nothing illegal on his person. At this point, McGarrity asked for permission to search the vehicle which was granted by [Appellant] ushering him towards the vehicle. He asked the occupants to step out and they did, but neither consented to a search. They stood behind the vehicle with the other officers.

McGarrity leaned into the driver's seat with his flashlight on and saw an empty cloth holster on the floor. He informed the

other officers and they searched the passengers who had nothing on their persons. He then leaned in further and saw the grip of a weapon sticking out from underneath the driver's seat.

He retrieved the weapon and detained [Appellant] who indicated that his girlfriend, Amber Uber, the car owner, owned a gun, but he did not. When he initially observed the gun, the slide was forward indicating that it was loaded. The gun, a SIG Sauer P938, is a 9 millimeter semiautomatic gun. This particular firearm had a laser on it to help acquire the target. This is not standard with the type of firearm, but it can be purchased as an add-on. It was registered to Amanda Uber, Appellant's girlfriend and the mother of his son.

Based on his criminal history, Appellant was not permitted to carry a firearm. Appellant has a prior conviction for possession with intent to deliver crack cocaine. Immediately following testimony regarding Appellant's prior conviction, the [trial court] cautioned the jury as follows:

> And as a cautionary instruction to you, ladies and gentlemen, for purposes of proving its case regarding person not to possess a firearm, the Commonwealth introduced the certified record as well as the testimony of Detective Heffner.
>
> You may consider the [Appellant's] prior offense only as evidence to establish the prior conviction element – and you will hear the elements as I go through them when I give you my final instructions – that one of the elements is that they had to be convicted of an enumerated offense, the offense of possession with intent to deliver a controlled substance, which you learned through the stipulation. You may not consider it as evidence of the [Appellant's] bad character or general propensity to commit any crimes.

The gun was legally sold to Uber by Stephen Silcox, a friend of Appellant's on October 3, 2014. Appellant had spoken to Silcox about Uber purchasing a gun and was present for the transaction.

Uber testified and confirmed that the gun and holster were hers. She did not know how many bullets the gun held, nor was

she certain if the gun had a safety. Uber was not sure if it was a semiautomatic or automatic firearm; she did not know if the first shot was a single shot action or double action – in fact she testified she did not even know what that meant. Uber did not know how to load the gun. She did not believe that the gun has a flashlight or laser or any other special features.

Uber kept the gun on top of a large hutch in her house to keep it away from the kids. She had previously taken it to her aunt's house, but on trick or treat night she moved it to her car so that no one would take it.

Uber threw the gun under the driver's seat of her car that evening. Later that night, Appellant was given permission to take her car to pick up a friend. She was half asleep when she gave him permission and she forgot to tell him about the gun under the driver's seat. She testified that Appellant could not have known that the gun was in the car as she had not told him about it being there.

Trial Court Opinion, 5/11/16, at 2-5 (citations omitted).

Following these events, Appellant was charged with persons not to possess, use, manufacture, control, sell or transfer firearms. Appellant filed an omnibus motion on May 6, 2015, which contained a motion to suppress. Following a hearing on July 17, 2015, the trial court denied Appellant's omnibus motion. On November 2, 2015, Appellant raised a motion *in limine* seeking to bifurcate the charge of persons not to possess firearms based upon the elements of the offense. The trial court denied the motion the same date. A jury trial was held from November 3-4, 2015, after which the jury was unable to reach a verdict and the trial court declared a mistrial. A second jury trial was held on January 13, 2016, after which Appellant was found guilty of persons not to possess firearms. The trial court sentenced Appellant on March 9, 2016, to a period of 5-10 years' incarceration.

Appellant filed a timely post-sentence motion challenging the weight of the evidence on March 15, 2016. The trial court summarily denied the motion on March 17, 2016.

Appellant filed a timely notice of appeal on March 31, 2016. On April 21, 2016, the trial court directed Appellant to file a concise statement pursuant to Pa.R.A.P. 1925(b). Appellant complied with this order and filed his concise statement on May 5, 2016. The trial court issued two opinions pursuant to Pa.R.A.P. 1925(a), one by the Honorable Deborah E. Curcillo[2] on May 11, 2016, and one by the Honorable William T. Tully on May 24, 2016.[3]

Appellant raises four questions for review, which we quote verbatim.

I. Whether the [t]rial [c]ourt erred in denying Appellant's [m]otion to [s]uppress [e]vidence where police lacked reasonable suspicion or probable cause to conduct an investigative detention after Appellant was told he was free to go, in violation of Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution.

II. Whether the trial court erred in denying Appellant's [p]ost-[s]entence [m]otion where the verdict was against the weight of the evidence so as to shock one's sense of justice where the Commonwealth never showed, *inter alia*, that [Appellant] actually possessed or knew of the presence of the firearm for which he was convicted?

---

[2] The Honorable Deborah E. Curcillo presided over Appellant's second jury trial and addressed all related issues in her 1925(a) opinion.

[3] The Honorable William T. Tully presided over Appellant's omnibus pre-trial motion and address all related issues in his 1925(a) opinion.

III.    Whether the Commonwealth failed to present sufficient evidence to sustain Appellant's convictions where the Commonwealth did not prove that Appellant possessed the firearm or knew of its presence in the vehicle?

IV.    Whether the trial court erred in denying Appellant's request to bifurcate the charge of persons not to possess a firearm where the admission of Appellant's prior criminal charge was unduly prejudicial?

Appellant's Brief at 8.

Appellant's first argument is that the trial court erred when it denied his motion to suppress the vehicle stop. When reviewing an order denying a motion to suppress evidence,

> An appellate court may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, the appellate court is bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. However, it is also well settled that the appellate court is not bound by the suppression court's conclusions of law.

*Commonwealth v. Nguyen*, 116 A.3d 657, 663-64 (Pa. Super. 2015) (citations omitted). At the conclusion of the suppression hearing, the trial court made the following findings.

> After reviewing the cases, and the *Nguyen* case isn't necessarily on point. The first distinguishing factor would be in *Nguyen* the individual searched was the passenger of the vehicle after the driver of the vehicle gave permission to search the car. . . .
>
> After saying that you're free to leave the officer reengaged in each of those cases, confronting the individual with inconsistencies, almost like an interrogation. And the courts in those cases using the totality of the circumstances, balancing the statement you're free to leave with the other attendant circumstances which would leave a reasonable person to believe

that the statement you're free to leave would [not] necessarily be controlling . . . .

The **Strickler**[4] case lays out the basis that it's a mere encounter absent something that escalates it into a [quasi-custodial] circumstance. In this case the officer's testimony was very clear. That after he said he was free to leave, began to walk away, and [Appellant] started his vehicle, was prepared to leave and the officer reengaged in conversation. That conversation didn't confront him with inconsistencies, didn't confront him about his observed furtive movements or the nervousness but simply talked about the neighborhood and then [asked for his] permission to search.

I think under the totality of the circumstances as they're laid before me I have to take the holding of [**Strickler**], the Supreme Court case as controlling because it's distinguished . . . . So under these circumstances I'm going to have to deny the motion to suppress.

Trial Court Opinion, 5/24/16, at 9 (quoting N.T. Suppression Hearing, 7/17/15, at 28-29).

In **Strickler**, our Supreme Court noted a list of non-exclusive factors relevant to whether an individual has been seized. **Strickler**, 757 A.2d at 898-99. These include: (1) the presence or absence of police excesses; (2) physical contact or police direction of a citizen-subject's movements; (3) demeanor of the police officer; (4) location of the confrontation; (5) manner of expression of the police officer; (6) content of the interrogatories or statements; (7) existence and character of the initial investigative detention; (8) the degree of coercion; (9) the degree to which the transition between

---

[4] **Commonwealth v. Strickler**, 757 A.2d 884 (Pa. 2000).

the traffic stop/investigative detention and the subsequent encounter can be viewed as seamless; and (10) whether there was an express admonition to the effect that the citizen-subject is free to depart. *Id.*

In *Nguyen*, the trooper completed the first lawful detention/traffic stop and informed the driver he was free to go; however, "[a]fter walking toward his cruiser, the trooper turned around and returned to the driver's vehicle, approached the driver, and began to ask the driver additional questions." *Nguyen*, 116 A.3d at 668-69. The trooper asked questions about his nervousness, what he was doing, and his relationship with the passenger. *Id.* at 669. During this line of questioning, the driver remained outside of his vehicle. *Id.* at 668. Moreover, "when a person is standing outside rather than inside his vehicle, he is less likely to believe that he can actually leave the area by entering the car and driving away." *Id.* (citations omitted). The *Nguyen* Court found that under the totality of the circumstances, the second stop was an investigative detention without reasonable suspicion and therefore, the stop should have been suppressed.

In the matter *sub judice*, the trial court found that Appellant was informed he was free to leave, entered his vehicle, and started the engine, before Corporal McGarrity reengaged. Moreover, the corporal did not question Appellant, he was polite, and he simply informed Appellant that the area was dangerous before he asked to search the vehicle. Accordingly, we find that based upon the totality of the circumstances, the trial court properly found that the Appellant was free to leave the second encounter as

it was not an investigative detention. Accordingly, the trial court properly denied Appellant's motion to suppress. Appellant's claim fails.

Appellant's next argument is a challenge to the weight of the evidence.

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000) (citations omitted). "The weight of the evidence is exclusively for the finder of fact, which is free to believe all, part or none of the evidence, and to assess the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the jury on issues of credibility." *Commonwealth v. Palo*, 24 A.3d 1050, 1055 (Pa. Super. 2011).

Appellant is challenging whether the weight of the evidence insofar as he constructively possessed the firearm in question.

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa. Super. 2013) (quoting *Commonwealth v. Brown*, 48 A.3d 426, 430 (Pa. Super. 2012)). Furthermore, "[i]llegal possession of a firearm may be shown by constructive possession." *Commonwealth v. Cruz*, 21 A.3d 1247, 1253 (Pa. Super. 2011) (citing *Commonwealth v. Parker*, 847 A.2d 745, 750 (Pa. Super. 2004)).

The trial court found that Appellant was driving the vehicle, the firearm was located underneath the driver's seat, and while the firearm was registered to Amanda Uber, she was unfamiliar with the specifications of the firearm, and she was unaware of how to load the weapon. Additionally, the trial court found that the gun holster was visible to the driver, and the grip of the gun was visible under the driver's seat. Thus, Appellant, as the driver of the vehicle, would have seen the firearm when he entered the vehicle. Therefore, we find that the trial court did not abuse its discretion when it denied Appellant's weight of the evidence claim.

Appellant's third argument is that the Commonwealth failed to present sufficient evidence that Appellant possessed the firearm or knew of its presence in the vehicle. Our standard of review of a sufficiency challenge is well established.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and

- 10 -

circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilty may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated an all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

**Commonwealth v. Phillips**, 93 A.3d 847, 856 (Pa. Super. 2014) (quoting

**Commonwealth v. Jones**, 874 A.2d 108, 120-21 (Pa. Super. 2005)

(quoting **Commonwealth v. Bullick**, 830 A.2d 998, 1000 (Pa. Super.

2003))). In order to be convicted on a charge of persons not to possess

firearms, the Commonwealth must prove two elements: possession, and a

previous conviction for an enumerated offense. Appellant is not challenging

his previous conviction, he is only challenging whether he constructively

possessed the firearm in question. As discussed above, "[c]onstructive

possession is an inference arising from a set of facts that possession of the

contraband was more likely than not." **Hopkins**, 67 A.3d at 820 (quoting

**Brown**, 48 A.3d at 430).

In the matter *sub judice*, the gun was found in a holster underneath

the driver's seat of the car Appellant was driving. Corporal McGarrity saw

Appellant reaching underneath his seat after he pulled over. Viewing the

evidence in the light most favorable to the Commonwealth, Appellant was in

- 11 -

constructive possession of the firearm located beneath his seat in the vehicle he was driving. Appellant's sufficiency claim fails.

Appellant's final argument is that the trial court erred when it failed to bifurcate the trial based on the elements of person not to possess firearms. Essentially, Appellant is arguing that there should be separate trials for each element of the offense because the evidence of his prior conviction is inherently prejudicial. Appellant cites no authority for this proposition other than cases where a motion to sever was granted in **multi-count** indictments. **See Commonwealth v. Jones**, 858 A.2d 1198 (Pa. Super. 2004); **Commonwealth v. Carroll**, 418 A.2d 702 (Pa. Super. 1980). In **Commonwealth v. Jemison**, 98 A.3d 1254, 1262 (Pa. 2014), our Supreme Court held that a defendant does not suffer "unfair prejudice merely by the admission into evidence of his or her certified conviction of a specific, identified, predicate offense, which has been offered by the Commonwealth to prove the prior conviction element of § 6105." **Jemison**, 98 A.3d at 1262. Therefore, Appellant's argument is meritless.

Judgment of sentence affirmed.

Judge Dubow joins this memorandum.

Judge Lazarus files a concurring statement in which Judge Dubow joins.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/24/2017