J-A12033-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOHN J. VOIT | : | |
| | : | |
| Appellant | : | No. 1248 WDA 2019 |

Appeal from the Judgment of Sentence Entered June 13, 2019,
In the Court of Common Pleas of Allegheny County,
Criminal Division at No(s):  CP-02-CR-0005607-2018.

BEFORE:   KUNSELMAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                    **FILED SEPTEMBER 11, 2020**

John J. Voit appeals from the judgment of sentence imposed following his conviction of simple assault and harassment.[1]  We affirm.

On April 7, 2018, Voit was involved in an altercation with his sister, Laurie Craig, and her husband, Glenn Craig, at their marital residence.  Following the incident, Voit was arrested and charged with the above offenses.  The matter proceeded to a jury trial.  The trial court summarized the relevant testimony and evidence adduced at trial as follows:

> [Voit] had been living with his sister, Laurie Craig, and her husband, Glenn, in their marital home since October 13, 2014.  In lieu of paying rent, [Voit] would contribute to the household by cleaning and performing various other tasks around the home.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. §§ 2701(a)(1), 2709(a)(1).

In the months leading up to the April 7, 2018 incident, the relationship between [Voit] and his sister became strained. [Voit] was experiencing money problems and had repeatedly asked to "borrow" money from Mrs. Craig and her husband. However, when [Voit] asked if he could borrow more money on March 30, 2018, Mrs. Craig apologized, telling [Voit] that she and her husband could not give him any more money at that time.

The next day, on March 31, 2018, [Voit] again asked his sister for money. Mrs. Craig told [Voit], "No I'm sorry. We cannot give you any more money at this time. You're welcome to live here, stay here, we'll provide you with food, [and a] home. . . . We just can't give you any more money." For the next week, things grew "very tense in the home." [Voit] stopped doing his chores, became "more moody," and stopped speaking to the Craigs.

At approximately 2:00 p.m. on April 7, 2018, an argument began between [Voit] and his sister when Mrs. Craig questioned whether he was planning to continue vacuuming, cleaning, and doing his normal chores around the house. [Voit] told Mrs. Craig that he would "still clean his room and his bathroom and vacuum the family room, but he wasn't doing anything extra." Mrs. Craig told [Voit] that she did not think that was fair, and [Voit] responded by telling her that he did not "give a shit anymore."

[Voit] proceeded to start the vacuum cleaner, but Mrs. Craig, wanting to finish their conversation, unplugged it. She informed [Voit] that their current living arrangement was no longer viable and that she would help pay for an apartment for him to move into. In response, [Voit] told his sister to "go blow it out your fat ass," as he walked away from her. Mrs. Craig retorted with, "go blow it out of your fat ass and for once in my life your ass is fatter than mine." [Voit] then told her to "shut the H up."

At that very moment, Mrs. Craig's husband Glenn, came home and heard [Voit] swear at his wife. Mr. Craig told [Voit], "Don't talk to her like that." [Voit] responded, "That's it. I'm going to get you," and he came towards Mr. Craig with his fist raised over his head in a striking motion. Mr. Craig told [Voit] to "get out" of his house, which made [Voit] angry. [Voit] then raised his fist and came after Mr. Craig. Mrs. Craig recalled that she and her husband were "scared" and that they believed that

- 2 -

[Voit] was going to hurt them. They had "felt it coming all week" with the way that [Voit] had been acting.

As [Voit] was making his way towards Mr. Craig, Mrs. Craig ran to call the police. [Voit] threw a punch at Mr. Craig, but he missed because Mr. Craig was able to move out of the way. Mrs. Craig heard "a thud against the hall wall," but she did not see what happened at that time. When she came around the corner and saw her husband running away from [Voit] down the hall, she saw that [Voit] was still pursuing him with his fist raised. At this point, [Voit] struck Mrs. Craig twice in the face - first punching her above her right eye and then upper-cutting her with his right hand to her left chin.

After Mrs. Craig suffered the two blows to the face, she crawled under the kitchen table with the phone still in her hand. Mr. Craig saw what had happened to his wife and tried to lure [Voit] away from her. [Voit] followed Mr. Craig out onto the back deck, throwing a "big metal chair" at Mr. Craig as he jumped off of the deck.

Mrs. Craig was also able to call 911 for help when [Voit] ran after her husband. Officers from the Northern Regional Police Department arrived shortly thereafter. Officer [Jennifer] Abbondanza "immediately notice[d] the swelling that was above Laurie's right eye" and "some swelling on her left chin." The officers took witness statements and photographed her injuries. [Voit] was not observed to have any injuries, and he denied hitting his sister.

Following the investigation conducted at the home, [Voit] was taken into custody. Mrs. Craig went to the hospital four (4) days after she was assaulted due to the extent of swelling around her eye. She had "big pockets of blood" on the side of her face, and the bruising under her eyes was visible until September of that year. Through photographs, she documented her injuries and the progression of those injuries over time. Those photographs were admitted as Commonwealth Exhibits One (1) through Four (4) at trial.

Trial Court Opinion, 11/1/19, at 4-8 (citations to the record and footnotes omitted).

At the conclusion of trial, the jury convicted Voit of both charges. On June 13, 2019, the trial court sentenced Voit to two years of probation for simple assault, with no further penalty for harassment. The trial court also ordered Voit to undergo drug and alcohol and mental health evaluations, and attend anger management classes.

Voit filed a timely post-sentence motion asserting that the verdict was against the weight of the evidence. Following a hearing, the trial court denied the motion. Thereafter, Voit filed a timely notice of appeal. Both Voit and the trial court complied with Pa.R.A.P. 1925.

Voit raises the following issues for our review:

1. Did the trial court err in giving a jury instruction which improperly lowered the Commonwealth's necessary burden of proof on the concept of "reasonable doubt?"

2. Did the trial court err in denying the post-sentence motion because the guilty verdict was contrary to the weight of the evidence provided?

Voit's Brief at 7.

In his first issue, Voit challenges the trial court's instructions to the jury. Our standard of review in assessing a trial court's jury instructions is as follows:

> When evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper. A trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error.

- 4 -

*Commonwealth v. Miller*, 172 A.3d 632, 645 (Pa. Super. 2017) (quotation marks and citations omitted).

Voit challenges the court's denial of his objection at trial to the use of an example when instructing the jury on reasonable doubt. Prior to the jury's deliberations, the court recited the standard instruction on reasonable doubt set forth in § 701 of the Pennsylvania Suggested Standard Criminal Jury Instructions, and then provided to the jurors an illustration to assist them in understanding that legal concept. The trial court stated:

> While the Commonwealth has the burden of proving the defendant guilty beyond a reasonable doubt, this does not mean that the Commonwealth must prove its case beyond all doubt or to a mathematical certainty. Nor must the Commonwealth demonstrate the complete impossibility of innocence.
>
> I've used the term reasonable doubt several times now and certainly counsel has, as well. I will now define that term for you. A reasonable doubt is the kind of doubt that would cause a reasonably careful and sensible person to pause or hesitate before acting in a matter of importance in his or her own affairs.
>
> In other words, in order to find the defendant guilty, you must be convinced of his guilt to the same degree as you would be convinced about a matter of importance in your own life in which you would act with confidence and without restraint or hesitation.
>
> A reasonable doubt must be a real doubt. It may not be an imagined one nor may it be a doubt merely manufactured in order to avoid carrying out an unpleasant duty. We must all recognize that sometimes simply out of fear of making an important decision, we may imagine doubts that are based on virtually anything. It is important and, in fact, vital that you make sure that doubts that you allow to affect your decision about whether this defendant has been proven guilty or is not guilty are based on fact and reason.
>
> A lot of times that definition doesn't do it for everybody. So I do try to give you a very simple explanation or example. It is

certainly a simple explanation or example. It's not something you're going to find in the criminal division. But just to give you an idea.

Let's say I'm going on a trip to see my in-laws, and I have to take a flight so I have to get to the airport. I don't know about you, but I absolutely detest ironing. So what I do is I put my clothes in the dryer and put them on that fluff cycle and . . . fluff them back and forth and put them on a hanger and that's good.

But I'm going to see the in-laws. You know that's not going to work. So I have to iron my clothes. I'm not used to doing that very often. As I'm heading down the Parkway, a thought pops into my mind. Did I turn off the iron, because I'm not used to having it out. If I think, well, maybe I did and maybe I didn't, and I think, well, I remember pulling out the plug and I head to the airport, then I don't have a reasonable doubt that I left the iron on.

If I turn around to go back to my house and check, but only because I want to miss the only available flight to the in-laws, again, I don't have a reasonable doubt. I have a simply manufactured doubt in order to avoid an unpleasant duty.

If, however, I'm truly not sure and I go back through my day and I think, "I remember going past the kitchen counter. Did I pull the plug? And I'm really not sure at that point whether or not I turned off that iron." And if I pull off on the side of the road to call a family member or a neighbor with a key to go check for me or if I loop back around and go home, then I do have a reasonable doubt.

To summarize, you may not find the defendant guilty based on the mere suspicion of guilt. The Commonwealth has the burden of proving the defendant guilty beyond a reasonable doubt. If the Commonwealth meets that burden, the defendant is no longer presumed to be innocent and you should find him guilty.

On the other hand, if the Commonwealth does not meet its burden, then you must find the defendant not guilty.

N.T. Trial, 1/31/19, at 41-45.

Voit argues that the example used by the trial court, "Did I leave the iron on?" is problematic. First, he asserts, "the use of a mundane, slightly insignificant example, when compared to the momentous consequence of a defendant losing his liberty by being sent to prison, understates the gravity of the situation involved."[2] Voit's Brief at 24. Voit argues that "[t]his, in turn, reduces the standard of proof from 'beyond a reasonable doubt,' equating the burden here more closely to the standard used in civil cases, proof by a preponderance of the evidence." *Id*.

Voit further argues that leaving an iron plugged in when you're not home might be dangerous, but it also might not, since most irons and other appliances will turn themselves off when not in use. Voit additionally points out that mistakenly leaving an appliance on is also something that happens every day in many households, but is not a matter of great importance or a matter of life and liberty. *Id*. at 26. Thus, Voit maintains that the instruction provided could permit jurors to find a defendant guilty based upon evidence that is less than the required "beyond a reasonable doubt" standard. *Id*. at 27.

Voit additionally claims that the iron example focuses more on the memory of the juror than on anything else. *Id*. at 28. He asserts that "a jury is tasked with much more than just remembering trial testimony during

_____

[2] Notably, Voit received a probationary sentence, and no jail or prison time was imposed by the trial court at sentencing.

deliberations – there must be a *critical evaluation* of the testimony and consideration of the totality of the circumstances presented." ***Id***. Voit argues that jurors are encouraged to discuss their evaluation of the evidence presented with each other before finding that a criminal charge was proven beyond a reasonable doubt. ***Id***. He claims that, "[i]nstead of a consideration of factors like the testimony and exhibits presented at trial, and the legal definitions given by the judge, the jury thinks back to whether they remember pulling the plug of the iron out of the socket." ***Id***.

The trial court considered Voit's first issue and determined that it lacks merit. It reasoned as follows:

> The illustration used was straight-forward, relatable to the average juror, and was a clear and accurate statement of the law when read with the remainder of the charge. ***See Commonwealth v. Jones***, 858 A.2d 1198, 1203 (Pa. Super. 2004). With respect to the argument that the example was improper "because it fails to indicate reflection on a decision of great importance to one's life," the court simply notes that courts have upheld reasonable doubt examples that relate to simple acts of crossing the street, ***Jones***, ***supra***, at 1203, and sending children to private school, ***Commonwealth v. Fisher***, 813 A.2d 761 (Pa. 2002). Just like the act of crossing a busy street, the act of deciding whether to turn around and check on an appliance that could cause a house fire is an important matter in one's life and was simple for the jury to understand.
>
> Moreover, the court did not encourage the jury to solely employ their memory in making any such determination. Rather, it specifically pointed to the use of evidence (*ex*. "I unplugged the iron") in determining, whether there was reasonable doubt to turn around. In any event, the court notes that jurors must always employ their memories to some degree when deliberating, since their recall of the evidence facilitates the deliberation process. The court further notes that the example also served to highlight the difference between a manufactured doubt and a sincere doubt.

- 8 -

> When read alongside the instructions as a whole, the analogy fairly and accurately explained the law, and it offered clarity to the jury. As such, this court did not abuse its discretion in denying that objection to the charge.

Trial Court Opinion, 11/1/19, at 17-18.

A trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. *See Miller*, 172 A.3d at 645. That the trial court chose to use a real-life example does not, on its own, entitle Voit to relief. As our Supreme Court has explained "[m]any trial judges employ concrete illustrations to help make clear to the jury what the issues are which the jury is to decide and how to apply legal principles to the facts so as to reach a just verdict." *Commonwealth v. Malone*, 47 A.2d 445, 448 (Pa. 1946). Pennsylvania courts have upheld verdicts of guilt resulting from trials wherein the court used real-life examples to explain the concept of reasonable doubt. *See Jones*, 858 A.2d at 1201 (affirming judgment of sentence where trial court attempted to clarify reasonable doubt by providing an example that dealt with the decision to cross the street at noon, when traffic was heavy, as opposed to midnight, when there would be little to no traffic); *see also Fisher*, 813 A.2d at 769-70 (holding that jury instruction on reasonable doubt which included an illustration regarding a decision as to whether to send a child to private school in order provided an accurate statement of the law when read as a whole); *Commonwealth v. White*, 424 A.2d 1296 (Pa. 1981) (holding that illustration in charge offered clarity to the jury); *Commonwealth v.*

*Hobson*, 398 A.2d 1364 (Pa. 1979) (holding that charge with illustration, when read as a whole, did not prejudice defendant); *Commonwealth v. Fuller*, 579 A.2d 879 (Pa. Super 1990) (holding that illustrating concepts of "intentional," "knowing," and "reckless" to the jury were not prejudicial when entire charge read as a whole).[3]

Here, Voit is not entitled to relief unless he can establish that the trial court abused its discretion or provided an inaccurate statement of the law. We decline to find that the trial court abused its discretion or committed error when it provided the jury with an illustration of reasonable doubt. We find no fault with the iron example itself. It was straightforward and easily understandable. Every juror can relate to the concern caused by an uncertainty as to whether an appliance was left on in a residence that could potentially cause a fire.

Moreover, as noted previously, when evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper. *See Miller*, 172 A.3d at 645. In the instant case, the trial court recited the standard instruction on reasonable doubt set forth in § 701 of the Pennsylvania Suggested Standard Criminal Jury Instructions prior to providing the jury with the iron example. Voit concedes that the standard instruction provided an

---

[3] Notably, Voit's counsel used a real-life example himself during his closing argument to the jury in an effort to explain the concept of reasonable doubt, using an illustration of the decision by him and his wife as to whether to buy a house with cracked ceilings and floorboards. *See* N.T., 1/31/19, at 21-24.

accurate statement of the law, and that it may be sufficient to instruct jurors on the standard of proof required by the Constitution prior to a guilty verdict. *See* Voit's Brief at 19, 31. Voit additionally points to numerous portions of the trial court's instructions which he regards as correct statements of the law, and claims that those instructions, if followed by the jury, would enable the jury to reach a reasoned conclusion about guilt or innocence.[4] *See id*. at 28-30. In our view, when the iron example is read with the remainder of the charge, we find that the charge, as a whole, is a clear and accurate statement of the law that does not afford Voit grounds for reversal of his judgment and sentence. Thus, his first issue warrants no relief.

In his second issue, Voit challenges the weight of the evidence supporting his guilty verdicts. The following legal principles apply when a challenge to the weight of the evidence supporting a conviction is presented to the trial court:

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role

---

[4] Importantly, the law presumes that juries follow the court's instructions as to the applicable law. *See Commonwealth v. Hawkins*, 701 A.2d 492, 503 (Pa. 1997).

- 11 -

of the trial judge is to determine that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice."

***Commonwealth v. Widmer***, 744 A.2d 745, 751-52 (Pa. 2000) (citations, footnotes and quotation marks omitted, emphasis added).

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence*. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013) (emphasis in original, internal citations omitted). The finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses. ***Commonwealth v. Boyd***, 73 A.3d 1269, 1274 (Pa. Super. 2013) (*en banc*).

Here, Voit was convicted of simple assault and harassment. A person is guilty of assault if he or she "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]" 18 Pa.C.S.A. § 2701(a)(1). "Bodily injury" is defined as "[i]mpairment of physical condition or substantial

- 12 -

pain." *Id*. §2301. "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." *Id*. § 901(a).

"A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person: . . . strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same[.]" *Id*. § 2709(a)(1).

With respect to his simple assault conviction, Voit argues that the crimes code "is not envisioned to prevent temporary hurts resulting from trivial contacts which are a customary part of modern day living." Voit's Brief at 36-37. He claims that "[p]etty slaps, kicks and shoves do not amount to bodily injury." *Id*. at 37. He further claims that he testified that he did not punch or attempt to punch his sister, though he admits that they all fought each other. With respect to his sister's black eye, Voit testified that it must have been caused when Glenn fell on top of Laurie during the disagreement. Finally, Voit contends that he suffered no injuries to his hands during the incident, which would logically have occurred if he had punched his sister.

In regards to his harassment conviction, Voit asserts that no evidence was presented to show that he had an intent to harass, annoy, or alarm anyone. Rather, he maintains that "there was a family squabble in which [they] all over-reacted in the heat of the moment." Voit's Brief at 38. In

reference to his own actions, Voit claims that "[h]e was merely letting off steam in a normal family argument." **Id**.

The trial court considered Voit's weight of the evidence challenge and determined that it lacked merit. The trial court reasoned as follows:

> This court did not abuse its discretion in denying [Voit's] post-sentence motion because the verdict was not against the weight of the evidence. This court presided over the jury trial in this case, and this court's conscience was not at all shocked by the guilty verdict that was rendered. Simply put, the Commonwealth presented the testimony of three (3) witnesses whom the jury found to be credible. Through that witness testimony, it was established that [Voit] punched his sister in the face not once, but twice, in the middle of an argument about housework. As noted, the injuries sustained by Mrs. Craig were readily observable to law enforcement and were documented through photographs that were shown to and considered by the jury.
>
> While [Voit] took the stand and provided a different account of events, the jury clearly rejected his version of what transpired. In sum, [Voit] agreed that the verbal argument that took place on April 7, 2018 related to chores, but he claimed that his sister was the one who became upset first. [Voit] claimed that his sister hovered over him and said, "no more car, no more food, no place to stay," which left him "stunned." [Voit] then claimed that his "buttons" got pushed when his sister said, "obviously you don't want to live here anymore." [Voit] made a fat-shaming comment to his sister, and she retorted with a similar comment.
>
> [Voit] testified that Mr. Craig came home at that point and immediately told him he had to leave. [Voit] claimed that a shoving, pushing, and kicking match then ensued between him and Mr. Craig and that his sister joined in the altercation. [Voit] testified that "[a]ll actors [had] their hands on each other" during this shoving match and that he was trying to defend himself. [Voit] denied ever punching his sister and theorized that she sustained her injuries when her husband fell on top of her in the kitchen during the scuffle.
>
> Based on [Voit's] tone and demeanor, and considering the actual substance of his testimony, this court had little trouble

understanding why the jury rejected his version of events. This court studied [Voit] as he testified and it is no mystery why the jury did not find him to be credible. [Voit] came across as combative, and his version of events did not carry the "ring of truth." The jury also likely discredited his testimony because it was inconsistent with, and unsupported by, other evidence in the record, and offended one's common sense. As Officer Abbondanza testified during rebuttal, the version of events that [Voit] testified to at trial was never relayed to her when she was investigating the incident

[Voit's] challenge to the weight of the evidence is, at its core, an invitation for the appellate court to reweigh the evidence and second guess the credibility determinations that were made by the jury in this case. The reviewing court respectfully should decline to accept such an invitation because it was the function of . . . the finder of fact to evaluate the evidence and determine the weight it should be given. There were no facts in this case that were so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. To the contrary, the weight of the evidence was squarely against [Voit] and this court respectfully requests that his conviction be upheld on appeal.

Trial Court Opinion, 11/1/19, at 11-14 (citations to the record, quotation marks, parentheses, emphasis, and legal citations omitted).

In the instant matter, the jury, as finder of fact, was the exclusive judge of the weight of the evidence, and was free to believe all, part, or none of the self-serving testimony provided by Voit. ***Boyd***, 73 A.3d at 1274. The jury was also tasked with determining the credibility of the witnesses, and was free to find Voit non-credible. ***Id***. Finally, because the trial judge presided over Voit's trial and had the opportunity to hear and see the evidence presented, and to observe Voit's courtroom demeanor, we give the gravest consideration to the findings and reasons advanced by the trial judge. ***See Clay***, ***supra***. As we

- 15 -

discern no abuse of discretion by the trial court in rejecting Voit's weight challenge, Voit's second issue merits no relief.[5]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/11/2020

---

[5] While Voit additionally claims that there was no proof of certain elements of his crimes, a claim that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict, including each element of every conviction. **See Widmer**, **supra**.