J-S03009-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DILLON MICHAEL CRABILL | : | |
| | : | |
| Appellant | : | No. 340 MDA 2023 |

Appeal from the Judgment of Sentence Entered January 26, 2023
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0002758-2021

BEFORE:  OLSON, J., NICHOLS, J., and BECK, J.

MEMORANDUM BY OLSON, J.:                     **FILED: NOVEMBER 13, 2024**

Appellant, Dillion Michael Crabill, appeals from the judgment of sentence entered on January 26, 2023, following his convictions for two counts of harassment and one count each of stalking and criminal trespass – simple trespasser.[1]  We affirm Appellant's convictions for stalking and simple trespass but vacate his convictions on the two counts of harassment.  Furthermore, we vacate the entirety of Appellant's judgment of sentence, and remand for additional proceedings consistent with this memorandum.

The trial court briefly summarized the facts of this case as follows:

On April 11, 2021, Rafael Diaz was outside cutting the grass on his property at his home residence [in] Glenview[,] Pennsylvania (the "Diaz residence").  A motorcyclist and silver Volkswagen rode past the Diaz residence yelling that Rafael Diaz needed to "clean the yard and to go slower."  Later, Rafael Diaz was able to identify the driver of the Volkswagen as Appellant and police officers

---

[1]  18 Pa.C.S.A. §§ 2709(a)(4), 2709.1(a)(2), and 3503(b.1)(1).

discovered that Appellant owned the Volkswagen after running the [license plate number] through the Maryland vehicle database. The motorcyclist and [A]ppellant began yelling "offensive words back and forth" towards Rafael Diaz. The motorcyclist and Appellant [] threaten[ed] Rafael Diaz and yell[ed] racial slurs. Appellant stated, "I'm going to come back with another person." After this initial incident, Rafael Diaz was scared and nervous, so he called his son, Juan Diaz, to inform him of what occurred. Juan Diaz called the police to report the incident on April 11, 2021.

The motorcyclist and silver Volkswagen later returned to the Diaz residence [where they were] recorded by cameras[.] Appellant told Rafael Diaz that "he had to clean up the grass that was on the road." Rafael Diaz photographed the individual in the Volkswagen ["giving Rafael Diaz the middle finger"], and he also yelled at Rafael Diaz. [] When the motorcyclist and the Volkswagen returned to the Diaz residence, Rafael Diaz feared that "they would come in and do something."

On April 13, 2021, the Volkswagen returned to the Diaz residence around 11:00 p.m., and pulled into the driveway [] while Rafael Diaz and Juan Diaz were letting [their] dogs outside to [go to] the bathroom. The Volkswagen pulled into the driveway of the Diaz residence. Rafael Diaz was able to see the driver of the Volkswagen, and identify him as Appellant, because the Diaz residence was well lit with white lights on every corner, and Rafael Diaz was wearing a head lamp. [Two] individuals [emerged from] the Volkswagen and broke what sounded like a glass bottle. [Appellant] and [a second individual who appeared to be the] motorcyclist yelled to Rafael Diaz, "you want to run your mouth now, you spic boy. We're here to teach you what we do to spic boys like you."

When the motorcyclist and Appellant began walking up the driveway, Juan Diaz started to run down the driveway towards them. The motorcyclist and Appellant ran back to their [vehicle] and drove away. Juan Diaz got into his truck and followed the individuals in the Volkswagen. Appellant and [his] passenger eventually exited the Volkswagen and told Juan Diaz to follow them and "find out what they do to pussy spic boys like him." Juan Diaz felt "scared" and "helpless" because of these incidents.

Appellant and the other individual [] threaten[ed] the Diaz family with threats of physical harm. Appellant called Juan Diaz various different racial terms including, "stupid spic," "beaner,"

"wetback," and "boy." During one of these incidents, Appellant called Rafael Diaz a "habanero or jalapeno pepper," and a "spic."

Trial Court Opinion, 5/18/2023, at 1-4 (original brackets, footnotes, and record citations omitted).

A jury trial commenced on October 24, 2022. Important to this appeal, after the jury began its deliberation, the jury asked the trial court the following question:

In the context of law, must it be shown or proven that a person, the one being charged, showed up with the intent to harass only a specific person? For example, can someone be harassed if they were not the target?

The trial court answered the jury question with the following answer [and subsequent jury instruction]:

[Appellant] has been charged with two counts of harassment. To find [Appellant] guilty of this offense, you must find that each of the following elements has been proven for each alleged victim beyond a reasonable doubt.

First, that [Appellant] communicate[d] to or about Rafael Diaz and/or Juan Diaz any threatening words or language. That is to say that [Appellant] yelled racial slurs and/or threatening language to Rafael Diaz and/or Juan Diaz.

Second, that [Appellant] did so with the intent to harass, annoy, or alarm Rafael Diaz and/or Juan Diaz. A person [] acts intentionally when his or her conscious objective or purpose could cause such a result.

Now, that really doesn't advance the cause much because it's the same thing that [you were charged] with [initially] and the same [instruction] you had in writing when you were [deliberating]. So after discussion with counsel, although, not unanimous [, the trial court decided] to charge [the jury] as to a doctrine [not] touched upon because the question didn't come up, and that's the concept of transferred intent. [As case law provides, t]he essence of the transferred intent theory is that the person who is

- 3 -

ultimately the victim need not be the original intended victim. The transferred intent theory provides that if the intent to commit a crime exists, this intent can be transferred for the purpose of finding intent in the element of the other offense.

Trial Court Opinion, 5/18/2023, at 9-10 (record citations and quotations omitted). After the trial court issued the supplemental jury instruction in response to the jury's question, the jury resumed deliberations. On October 25, 2022, Appellant was found guilty of the aforementioned charges.[2]

On November 29, 2022, the trial court sentenced Appellant to an aggregate term of three to 12 months of imprisonment with a consecutive term of 12 months of probation and a $200.00 fine. Appellant filed a timely motion for reconsideration on December 1, 2022. Following hearings, wherein Appellant was present, the trial court entered orders on January 10, 2023, and on January 20, 2023, which amended the original sentencing order and granted Appellant supervised, electronically-monitored, bail pending appeal. On January 26, 2023, the trial court entered an amended sentencing order

---

[2] As mentioned, the jury found Appellant guilty of stalking and two counts of harassment. The jury also found Appellant not guilty of one count of ethnic intimidation. 18 Pa.C.S.A. § 2710. The trial court later found Appellant guilty of the summary offense of criminal trespass.

which modified Appellant's minimum sentence from three months to one month of incarceration.[3]  This timely appeal resulted.[4]

On appeal, Appellant presents the following issue[5] for our review:

_____

[3] Despite the trial court's failure to amend Appellant's sentence in open court, Appellant was present at both reconsideration hearings and, therefore, we conclude that the trial court was in substantial compliance with Pennsylvania Rule of Criminal Procedure 602.  **See** Pa.R.Crim.P. 602 ("The defendant shall be present at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence.").

[4] On February 22, 2023, Appellant filed a timely notice of appeal.  On March 1, 2023, the trial court entered an order directing Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).  Appellant complied timely on March 22, 2023.  On May 18, 2023, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).  Before us, Appellant erroneously asserts that his appeal lies from both the original November 29, 2022 judgment of sentence and the amended judgment of sentence imposed on January 26, 2023.  However, in cases where the trial court amends the judgment of sentence during the period it retains jurisdiction pursuant to 42 Pa.C.S.A. § 5505, the direct appeal lies from the amended judgment of sentence.  **See Commonwealth v. Garzone**, 993 A.2d 1245, 1254 n.6 (Pa. Super. 2010); **see also Commonwealth v. Shamberger**, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*) ("In a criminal action, appeal properly lies from the judgment of sentence as made final by the denial of post-sentence motions.").

[5] We note that Appellant originally raised two additional issues which challenged the sufficiency of the evidence presented at trial and the imposition of a $200.00 fine without considering Appellant's ability to pay.  **See** Trial Court Opinion, 5/18/2023, at 5-6.  Appellant does not present these issues in his brief on appeal and will forgo appellate review of these claims.  **See Commonwealth v. Johnson**, 985 A.2d 915, 924 (Pa. 2009) (citation omitted) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."); **see also Commonwealth v. Heggins**, 809 A.2d 908, 912 (Pa. Super. 2002) (an issue identified on appeal but not developed in the appellant's brief is abandoned and, therefore, waived).

> Whether the lower court committed an abuse of discretion and/or legal error in giving the transferred intent jury instruction where the application of the instruction leads to absurd results when applied to harassment and defeats the purpose of the [c]riminal [i]nformation?

Appellant's Brief at 4.

Appellant argues the trial court "committed a legal error and abuse of discretion when it gave the transferred intent instruction on [] harassment charges." *Id.* at 10. Appellant contends that "applying the doctrine [of transferred intent] to harassment negates the intent element of [the statutory definition] of harassment which [requires a specific intent] to cause annoyance or alarm to a specific person." *Id.* Appellant further contends the transferred intent jury instruction "negated the purpose of the [c]riminal [i]nformation and prevented defense counsel from adequately preparing for what was an unforeseen act of criminal liability where the [i]nformation did not make it clear [Appellant's] statements could apply to either Rafael Diaz or Juan Diaz, indiscriminately." *Id.* at 10-11. Appellant argues that the trial court's erroneous jury instruction regarding transferred intent "essentially" allowed the jury to assign criminal liability "in an 'either/or' fashion with respect to the alleged victims." *Id.* at 20. Appellant asserts, "[h]owever, harassment is a crime where the intent and resulting injury are inextricably related and not transferable." *Id.* at 14; *see also id.* at 15 ("Therefore, applying the transferred intent doctrine to the case essentially eliminated the element of specifically intending to annoy one person and made it so any annoying statement by [Appellant] could be applied to anyone within earshot. …

- 6 -

Otherwise, liability for harassment could be found based on communication alone regardless of the intent to harass a specific person."); *see also id.* at 18 (opining transferred intent doctrine applies in "the context of physical harm or murder" but is "categorically different from … harassment. … Even where one person does intend to annoy a specific person, the transferred intent doctrine [leads to absurd results regarding harassment and] opens up the flood gates of liability where any annoyed person could claim to be a victim once the intent has been established."). Moreover, Appellant suggests that he was not properly apprised of the charges against him, as specified in the criminal information, in order to allow him to prepare his defense. *Id.* at 19-21.[6] Accordingly, Appellant contends that he is entitled to a new trial. *Id.* at 21.

_____

[6] We reject this aspect of Appellant's argument. "A criminal information is not constitutionally infirm if it notified the defendant of the crime[(s)] with which he is charged[,] when properly read in a common sense manner, [and which gives] adequate notice of the charges against him, regardless of the fact that the criminal information d[oes] not specify the specific intent element[.]" *Commonwealth v. Jones*, 912 A.2d 268, 289 (Pa. 2006). More specifically, the *Jones* Court held:

> "Indictments must be read in a common-sense manner, and are not to be construed in an overly technical sense." *Commonwealth v. Pope*, 317 A.2d 887, 890 (Pa. 1974). "At an earlier stage of legal development, indictments were strictly and technically construed, and the slightest imprecision in wording was often considered incurable error. Today, however, such arguments are unpersuasive." *Id.* (internal citations omitted). [Our Supreme] Court has upheld criminal indictments possessing a flaw and found them to be constitutional because they put the defendant on sufficient notice of the charge against him or her.

*(Footnote Continued Next Page)*

We have previously determined:

> In reviewing a challenge to the trial court's [] jury instruction, it is the function of this Court to determine whether the record supports the trial court's decision. In examining the propriety of the instructions a trial court presents to a jury, our scope of review is to determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case.

*Commonwealth v. Sandusky*, 77 A.3d 663, 667 (Pa. Super. 2013) (citation omitted).

"When a court instructs the jury, the objective is to explain to the jury how it should approach its task and the factors it should consider in reaching its verdict." *Commonwealth v. Bradley*, 232 A.3d 747, 759 (Pa. Super. 2020) (citation omitted). "The trial court is free to use its own expressions as long as the concepts at issue are clearly and accurately presented to the

---

> *See*, *e.g.*, *Commonwealth v. Kelly*, 409 A.2d 21 (Pa. 1979) (upholding indictment that charged defendant with possession of heroin when the controlled substance in fact was methamphetamine because defendant was well advised of the nature of the offense charged).
>
> *     *     *
>
> It is well settled that a purported variance will not be deemed fatal "unless it could mislead the defendant at trial, involves an element of surprise prejudicial to the defendant's efforts to prepare his defense, precludes the defendant from anticipating the prosecution's proof, or impairs a substantial right." *Pope*, 317 A.2d at 890 (footnotes omitted).

*Id.* Here, in the criminal information filed against Appellant, the Commonwealth specified two individual counts of harassment – one for each alleged victim. As such, we conclude there were no impediments or prejudicial surprises in order for Appellant to prepare his defense adequately.

jury." **Bradley**, 232 A.3d at 759 (citation and original brackets omitted); **see also Sandusky**, 77 A.3d at 667 ("Consequently, the trial court has wide discretion in fashioning jury instructions."). Moreover, our Supreme Court has stated:

> It is well settled that in reviewing a challenge to a jury instruction the charge, as a whole, must be considered. Furthermore, the trial court has broad discretion in phrasing the instructions, so long as the directions given clearly, adequately, and accurately reflect the law. Error in a charge is sufficient ground for a new trial, if the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue.
>
> A charge will be found adequate unless the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless there is an omission in the charge which amounts to fundamental error. Further, a reviewing court will not grant a new trial on the ground of inadequacy of the charge unless there is a prejudicial omission of something basic or fundamental. In reviewing a trial court's charge to the jury, we must not take the challenged words or passage out of context of the whole of the charge, but must look to the charge in its entirety. The harmless error doctrine underlies every decision to grant or deny a new trial. A new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake.

**Grove v. Port Auth. of Allegheny County**, 218 A.3d 877, 887–888 (Pa. 2019) (internal citations, quotations, and original brackets omitted).

"A person commits the crime of harassment when, with the intent to harass, annoy, or alarm another, the person … communicates to or about such other person any lewd, lascivious, threatening or obscene words, language, drawings or caricatures." 18 Pa.C.S.A. § 2709(a)(4). This Court will sustain

a conviction for harassment where the evidence shows "that the defendant [engaged in proscribed conduct and] had the specific intent to harass, annoy or alarm another." 18 Pa.C.S.A. § 2709. Such an intent "may be inferred from the totality of the circumstances." **Commonwealth v. Cox**, 72 A.3d 719, 721 (Pa. Super. 2013), *quoting* **Commonwealth v. Lutes**, 793 A.2d 949, 961 (Pa. Super. 2002).

Based upon our examination of the totality of the trial court's instructions to the jury, we find the trial court omitted fundamental components of the transferred intent doctrine and thereby misled the jury regarding its consideration of the element of intent, a highly material issue. Hence, the trial court abused its discretion and Appellant is entitled to a new trial on the harassment charges. Initially, we note that the trial court correctly charged the jury on the basic elements of each of the crimes as alleged. N.T., 10/24-25/2022, at 223-227. The trial court properly instructed the jury on the element of intent for each of the three crimes at issue. **Id.** at 224-225 (stating that, *inter alia*, to prove stalking the jury must find that Appellant "did so under circumstances that demonstrated that he intended to put Rafael and/or Juan Diaz in reasonable fear of bodily injury or intended to cause them substantial emotional distress."); **see also id.** at 225-226 (stating that, *inter alia*, to prove harassment the jury must find that Appellant "did so with the intent to harass, annoy or alarm Rafael Diaz and/or Juan Diaz" and that "[a] person acts intentionally when it is his or her conscious object or purpose to

cause such a result."); **see also id.** at 226-227 (stating that, *inter alia*, to prove ethnic intimidation, "[t]he intent element is satisfied if there is evidence that ethnic malice was the motivator for [Appellant's] criminal act.").

During deliberations, however, the jury asked "whether it [must] be shown or proven that a person, the one being charged, showed up with the intent to harass only a specific person [or can someone be harassed i]f they were not the target?" N.T., 10/24/2022-10/25/2022, at 256. Through the question it posed, the jury expressed its struggle to grasp the concept of formation of the requisite intent for harassment and asked the trial court for additional guidance. At this juncture, the trial court could have informed the jury that a specific intent to harass may be formed instantaneously. **See Commonwealth v. Mollett**, 5 A.3d 291, 313 (Pa. Super. 2010) ("[S]pecific intent [to kill] may be formed in an instant."); **see also Commonwealth v. Chambers**, 188 A.3d 400, 411 (Pa. 2018) (An intent to enter into a conspiracy may be "established instantaneously, or it can be the product of drawn-out deliberations. By way of example, in the context of multi-person fights, two participants can form a conspiracy to assault another person by discussing at length a plan to assault that person, or, alternatively, those same individuals can form the illicit agreement by mere nodding of heads, so long as they possess the requisite intent."). Such an instruction would have maintained the jury's focus on whether Appellant acted with specific intent to harass a particular victim and directed the jury to concentrate its deliberations on

whether the facts demonstrated, beyond a reasonable doubt, the formation of such an intent, even if formed within an instant. Rather than instructing the jury on transferred intent, the trial court should have explained that, while Appellant may have originally intended to harass a single target, the jury could infer that the Commonwealth proved beyond a reasonable doubt that Appellant committed separate acts against a second victim with the requisite intent, even if that intent was formed within an instant. As stated above, however, the trial court responded to the jury's question by instructing it on the doctrine of transferred intent.

Transferred intent is statutorily defined as follows:

[] When intentionally or knowingly causing a particular result is an element of an offense, the element is not established if the actual result is not within the intent or the contemplation of the actor unless:

(1) the actual result differs from that designed or contemplated as the case may be, only in the respect that a different person or different property is injured or affected or that the injury or harm designed or contemplated would have been more serious or more extensive than that caused; or

(2) the actual result involves the same kind of injury or harm as that designed or contemplated and is not too remote or accidental in its occurrence to have a bearing on the actor's liability or on the gravity of his offense.

18 Pa.C.S.A. § 303(b)(1)-(2). Our Supreme Court has determined that "[t]he very purpose of the transferred intent instruction is to permit appropriate inferences of malice and specific intent to flow to an unintended victim." ***Commonwealth v. Jones***, 912 A.2d 268, 280 (Pa. 2006).

- 12 -

Here, even though the trial court initially charged the jury with the proper elements of the offenses, including the requisite intent for each criminal charge, the jury was then instructed:

> The essence of the transferred intent theory is that the person who is ultimately the victim need not be the original intended victim. The transferred intent theory provides that if the intent to commit a crime exists, this intent can be transferred for the purpose of finding intent in the element of the other offense.

N.T., 10/24-25/2022, at 257.

Appellant contends that the trial court improperly applied the doctrine of transferred intent outside its typical confines of physical harm or murder. *See* Appellant's Brief at 18. Appellant also argues that the trial court essentially told the jury that it could find Appellant guilty beyond a reasonable doubt for two counts of harassment against two victims, even if he only intended to harass one victim. Accordingly, Appellant concludes that the trial court's erroneous instruction prejudiced him, by essentially relieving the Commonwealth's burden of proof on one of the two harassment charges and overextending Appellant's potential culpability to unforeseen and unintended victims.[7]

_____

[7] We note that there was sufficient evidence of Appellant's conscious objective and intent to harass both victims separately. N.T., 10/24/2022, at 106 and 120-123. Moreover, both victims testified that they were frightened by Appellant's threatening words. *Id.* at 73-74 and 124. As such, there was independent evidence to support two separate convictions for harassment, one for each victim, and a jury instruction regarding transferred intent was not strictly necessary. However, despite the independent evidence, the jury was palpably misled by the misstatement of the law which lessened the Commonwealth's burden of proof.

We have carefully studied the text of Section 303, together with its interpretive case law, and conclude that nothing in the statute limits its application to cases involving physical harm or precludes its application in matters where an offense is accomplished through the deployment of words, communications, or other intangible instrumentalities. The transferred intent statute is broad enough to encompass the crime of harassment. There is no statutory language or words that limit the scope of Section 303 to physical harm. Likewise, upon independent research, we have not uncovered any cases suggesting that transferred intent only applies to physical actions. Hence, we reject Appellant's claim that the trial court improperly applied the doctrine of transferred intent outside its typical confines of physical harm or violent assault.

Appellant's fallback challenge to the trial court's transferred intent instruction cannot be so easily dismissed. Here, the trial court explained to the jury that the theory of transferred intent applied when the ultimate victim was not the original, intended victim and that the doctrine provided that if the intent to commit a crime existed, it could be transferred for the purpose of finding intent in the element of the other offense. *See* N.T., 10/24-25/2022, at 257. However, Section 303(b) as set forth above, makes clear that when considering transferred intent, there are some mandatory restrictions or limitations regarding how and when the doctrine applies. The plain language of Section 303 states "the element [of intent] is not established if the actual result is not within the intent or the contemplation of the actor **unless**" one

of two statutory subparts are met. 18 Pa.C.S.A. § 303(b) (emphasis added). Injury or harm must be contemplated by the actor, but a different person is actually affected (and not merely present). 18 Pa.C.S.A. § 303(b)(1). The injury or harm cannot be too remote or accidental in its occurrence. 18 Pa.C.S.A. § 303(b)(2). In this case, the trial court did not instruct the jury regarding these aspects of the doctrine of transferred intent. Accordingly, the trial court erred in the manner that it gave the jury instruction because the presumption is against application of transferred intent unless one of the two subparts of 303(b) are specifically found by the factfinder. As such, there is merit to Appellant's contention that the jury was misled.

Accordingly, the trial court's failure to instruct the jury about instantaneous formation of intent to harass, coupled with the failure to properly charge the jury on the concept of transferred intent, warrants a new trial. When viewed in its entirety, the trial court's charge to the jury was so erroneous as to warrant relief. *See Commonwealth v. Jones*, 858 A.2d 1198, 1201 (Pa. Super. 2004) ("A verdict will not be set aside if the instructions of the trial court, taken as a whole, and in context, accurately set forth the applicable law."); *see also Commonwealth v. Pursell*, 724 A.2d 293, 314 (Pa. 1999) ("Error cannot be predicated on isolated excerpts of the charge ... it is the general effect of the charge that controls."); *Commonwealth v. Mickens*, 597 A.2d 1196, 1204–1205 (Pa. Super. 1991) (noting that when viewed in its entirety, an isolated misstatement is insignificant where it fails to prejudice the appellant, and the charge is

- 15 -

otherwise free of errors.).  A new trial is not warranted merely because some irregularity occurred during the trial unless Appellant demonstrates that he suffered prejudice from the mistake.  **Grove**, 218 A.3d at 888.

Finally, we have previously determined:

> If we conclude that a charge is erroneous, we will grant a new trial unless the error is deemed harmless.  An error is deemed harmless only if the appellate court is convinced beyond a reasonable doubt that the error is harmless. Moreover, a jury instruction will be upheld if it adequately and accurately reflects the law and is sufficient to guide the jury through its deliberations.

**Commonwealth v. Dietterick**, 631 A.2d 1347, 1352 (Pa. Super. 1993); **see also Commonwealth v. May**, 656 A.2d 1335, 1343 (Pa. 1995) (holding that May failed to demonstrate how he was prejudiced by failing to instruct the jury on the elements of felonies alleged to have occurred to support a second-degree murder charge when the jury found him guilty of first-degree murder and "[p]roof of first[-]degree homicide does not depend on proof of other felonies, and therefore the trial court's failure to define the elements of burglary and rape was of no import.").  Upon our review, while the harmless error doctrine applies to jury instructions, it is generally applicable when a trial court **omits** a relevant jury instruction from trial, but the totality of the given instructions are accurate reflections of the law, so that the jury is not otherwise misled.  **See May** (emphasis supplied).  Here, the converse is true. Even though it was proper to give a jury instruction regarding transferred intent, the trial court's instruction herein was not an accurate recitation of

applicable law and, therefore, Appellant was prejudiced. Accordingly, Appellant is entitled to relief.

Because Appellant does not challenge his convictions for stalking and simple trespass, we affirm those convictions.[8] We vacate the judgment of sentence for the two harassment charges and remand for the Commonwealth to determine whether to retry Appellant. **See** 18 Pa.C.S.A. § 109 (when prosecutor barred by former prosecution for the same offense). Moreover, "our Supreme Court [has] held that the proscriptions against double jeopardy do not prevent us from remanding for resentencing on all bills of information where our vacation of various related counts has upset the trial court's sentencing scheme."[9] **Commonwealth v. Sutton**, 583 A.2d 500, 502 (Pa. Super. 1990), *citing* **Commonwealth v. Goldhammer**, 517 A.2d 1280 (Pa. 1986).

_____

[8] Further, we recognize that there was only one count of stalking for the jury to consider and, therefore, there could be no confusion with the transferred intent instruction. The simple trespass summary offense was decided by the trial court, not the jury, and therefore, the jury instruction was inapplicable on this charge.

[9] Finally, we note that the trial court imposed a $200.00 fine for simple trespass without assessing Appellant's ability to pay. **See** 42 Pa.C.S.A § 9726(c)(1) ("The court shall not sentence a defendant to pay a fine unless it appears of record that ..." the defendant has the financial means to pay the fine and that the fine will not interfere with payment of restitution to a victim."); **see also Commonwealth v. Boyd**, 73 A.3d 1269 (Pa. Super. 2013) (*en banc*) (failure to consider a defendant's ability to pay before imposing fines is a non-waivable challenge to the legality of sentence). Because we are remanding for resentencing on all bills of information, the trial court must assess Appellant's ability to pay should it impose a new fine upon resentencing.

Convictions for stalking and simple trespass affirmed. Judgment of sentence vacated. Case remanded for additional proceedings consistent with this decision. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/13/2024